

# SUPREME COURT OF MISSOURI
# en banc

R.M.A. (A MINOR CHILD), by his
next friend:
RACHELLE APPLEBERRY,

             Appellant,

v.

BLUE SPRINGS R-IV SCHOOL
DISTRICT and BLUE SPRINGS
SCHOOL DISTRICT BOARD OF
EDUCATION,

             Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Opinion issued February 26, 2019*

No. SC96683

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable Marco Roldan, Judge

    R.M.A., by his next friend, appeals the circuit court's judgment dismissing with prejudice his petition alleging Defendants, the Blue Springs R-IV School District ("School District") and the Blue Springs School District Board of Education ("School Board"), unlawfully discriminated against him on the grounds of his sex in violation of section 213.065[1] of the Missouri Human Rights Act (MHRA). Because R.M.A.'s petition alleges facts that (if taken as true, as required by the standard of review) establish

---

[1] All statutory references are to RSMo 2000, unless otherwise indicated.

the elements of a claim under section 213.065, the judgment of the circuit court is vacated, and the case is remanded. This Court has jurisdiction pursuant to article V, section 10, of the Missouri Constitution.

**Background**

In October 2014, R.M.A. filed a charge of discrimination with the Missouri Commission on Human Rights ("Commission") alleging he was discriminated against in a public accommodation on the grounds of his sex. In July 2015, the Commission issued a notice of right to sue, which terminated its administrative proceedings. Then, following an unsuccessful attempt to obtain relief via a writ of mandamus,[2] R.M.A. filed suit in October 2015 against the School District and the School Board (collectively, "Defendants"). R.M.A.'s petition alleges his "legal sex is male" and that, by denying him "access to the boys' restrooms and locker rooms," Defendants have discriminated against him in the use of a public accommodation "on the grounds of his sex" in violation of section 213.065.2.

In November 2015, Defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted. The motion asserts two grounds for dismissal: (1) the MHRA does not cover claims based on gender identity and (2) Defendants are not "persons" as defined by section 213.010(14) and used in section 213.065.2. From September 2015 through May 2016, both R.M.A. and Defendants made numerous filings with the circuit court regarding Defendants' motion to dismiss. Then, in June 2016, the

---

[2] *See R.M.A. v. Blue Springs Sch. R-IV Dist.*, 477 S.W.3d 185 (Mo. App. 2015).

circuit court sustained Defendants' motion to dismiss without explanation and entered judgment dismissing R.M.A.'s petition with prejudice. This timely appeal follows.

## Analysis

Appellate courts review "a trial court's grant of a motion to dismiss … de novo." *Ward v. W. Cty. Motor Co., Inc.,* 403 S.W.3d 82, 84 (Mo. banc 2013). "A motion to dismiss for failure to state a claim on which relief can be granted is an attack on the plaintiff's pleadings." *In re T.Q.L.,* 386 S.W.3d 135, 139 (Mo. banc 2012). "Such a motion is only a test of the sufficiency of the plaintiff's petition." *Id.* "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Bromwell v. Nixon,* 361 S.W.3d 393, 398 (Mo. banc 2012). "The Court does not weigh the factual allegations to determine whether they are credible or persuasive." *Id.* "Instead, this Court reviews the petition to determine if the facts alleged meet the elements of a recognized cause of action …." *Id.* (quotation marks omitted).

Here, R.M.A. asserts he has stated a claim under section 213.065.2, which, in relevant part, provides: "It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person … advantages, facilities, services, or privileges made available in any place of public accommodation … or to segregate or discriminate against any such person in the use thereof on the grounds of … sex …." Therefore, the elements of a public accommodation sex discrimination claim under section 213.065 are:

3

(1) plaintiff is a member of a class protected by section 213.065;

(2) plaintiff was discriminated against in the use of a public accommodation (as defined by section 213.010); and

(3) plaintiff's status as a member of a protected class was a contributing factor[3] in that discrimination.

*Cf. Midstate Oil Co., Inc. v. Mo. Comm'n on Human Rights*, 679 S.W.2d 842, 846 (Mo. banc 1984) (holding elements of an employment sex discrimination claim under section 213.055 are: "that complainant [(1)] was a member of a class protected by § 296.020.1; [(2)] that she was discharged; and [(3)] that a gender-related trait – pregnancy – was a factor in respondent's decision to discharge her").

As is often said, Missouri is a fact-pleading state. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Co.*, 854 S.W.2d 371, 379-80 (Mo. banc 1993). But the facts

---

[3] In *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. banc 2007), this Court held a party seeking to make a claim of discrimination need only plead and prove that consideration of the party's age, disability, or other protected characteristics "contributed to" the unfair treatment. The "contributing factor" test set forth in *Daugherty* was abrogated by S.B. No. 43 (2017), which requires the protected classification be the "motivating factor" in the decision to discriminate. § 213.010(2), (19), RSMo Supp. 2017. But this change did not come about until nearly two years after R.M.A. filed his claim before the Commission and his petition in the circuit court. Generally, statutes are presumed to operate prospectively unless the legislature specifically provides for retroactive application of the statute or the statute is procedural. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993). The applicable statute is typically the one in effect when the petition was filed. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). Accordingly, the Court assumes for purposes of this case that the August 2017 amendments to sections 213.010 and 213.065 do not apply here because R.M.A. filed his petition in October 2015. Moreover, even if the "motivating factor" test applied, a question this Court does not now decide, it would have no bearing on the sufficiency of R.M.A's petition. As discussed below, R.M.A. claims he was discriminated against "on the grounds of," "based on," and "because of" his sex. These allegations are more akin to "but for" causation and, when assumed to be true, *Bromwell*, 361 S.W.3d at 398, plainly satisfy both the "contributing factor" test in *Daugherty* and the "motivating factor" test in section 213.010(2) and (19), RSMo Supp. 2017.

that must be pleaded are the ultimate facts, not evidentiary facts. *Scheibel v. Hillis*, 531 S.W.2d 285, 290 (Mo. banc 1976). Ultimate facts are those the jury must find to return a verdict for the plaintiff. *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 463 (Mo. banc 2017) (concluding "a not-in-MAI instruction must follow substantive law by submitting the ultimate facts necessary to sustain a verdict") (quotation marks and alteration omitted).

There is no Missouri Approved Instruction (MAI) for submitting a plaintiff's public accommodation claim under section 213.065 to a jury. But MAI 38.01(A), which applies to employment discrimination claims under section 213.055, can be made applicable with only minor modifications. Using MAI 38.01(A) as the starting point, therefore, a verdict director in this case would state (in substance if not in form):

> Your verdict must be for plaintiff [R.M.A.] if you believe:
>
> First, defendants [School District and School Board] denied plaintiff full and equal use and enjoyment of the males' restroom and locker room facilities at defendants' school, and
>
> Second, plaintiff's male sex was a contributing factor in such denial, and
>
> Third, as a direct result of such conduct, plaintiff sustained damage.

With these elements identified, the analysis required to resolve R.M.A.'s appeal is simple and straightforward.[4] This analysis, of course, requires a faithful application of

---

[4] Contrary to the arguments made by the parties, this analysis does not require consulting *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The parties devote much time and attention to whether R.M.A. has stated a claim for "sex stereotyping" under *Price Waterhouse* as though "sex stereotyping" is a distinct "type" of sex discrimination claim. But the MHRA does not provide for "types" of sex discrimination claims; a claim is either a claim of sex discrimination

5

the standard of review. *See, e.g., In re T.Q.L.*, 386 S.W.3d at 139 ("[T]his Court assumes that the allegations set forth are true and liberally grants the plaintiff reasonable inferences based on those allegations.").[5]

The first element is the defendants denying the plaintiff "full and equal use and enjoyment" of a public accommodation. § 213.065.1. R.M.A. alleges Defendants have denied him (and, in 2015 when the petition was filed, were continuing to deny him) "access to the boys' restrooms and locker rooms." Petition at ¶ 31, *R.M.A. v. Blue Springs School R-IV Dist.* (No. 1516-CV20874) (Cir. Court Jackson County, Sept. 25, 2015). *See also id*. at ¶ 27 (alleging "Defendants refused to give R.M.A. access to the boys' locker room and restrooms when he requested such access while attending Delta Woods Middle School"); *id*. at ¶ 40 (alleging Defendants "refused to give him access to

---

or it is not. Rather than a "type" of sex discrimination claim, "sex stereotyping" merely is one way to **prove** a claim of sex discrimination, i.e., "sex stereotyping" can be evidence of sex discrimination. *Price Waterhouse*, itself, makes this clear:

> Remarks at work that are based on sex stereotypes do not inevitably **prove** that gender played a part in a particular employment decision. The plaintiff **must show** that the employer actually relied on her gender in making its decision. In making this showing, stereotyped remarks can certainly **be evidence** that gender played a part.

*Id*. at 251 (emphasis added). Accordingly, because the issue is whether R.M.A.'s petition states a claim for sex discrimination, this Court must leave for another day consideration of the proof of that claim, including any proof of "sex stereotyping."

[5]   The dissent suggests this opinion wrongly presumes R.M.A. will be able to present evidence regarding his sex and whether his sex was a contributing factor to the discrimination he claims to have suffered, *see Slip Op*. at 6, n. 5, but this ignores the standard of review. *See Nazeri v. Mo. Valley Coll*., 860 S.W.2d 303, 312 (Mo. banc 1993) (stating that, in evaluating a motion to dismiss, it does not matter whether Plaintiff's "averments may well be difficult to … prove at trial"). By considering what R.M.A. may (or may not) be able to prove at summary judgment or trial, the dissent weighs the evidence at a time when this Court is to "accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Bromwell*, 361 S.W.3d at 398.

the boys' locker rooms"); *id*. at ¶ 42 (R.M.A. "has been required to use separate bathrooms from other boys on a daily basis and has been denied access to the boys' locker room if he wishes to participate in boys' P.E. or athletic activities."). A school's restrooms and locker rooms constitute public accommodations as defined in section 213.010(15)(e).[6] Thus, R.M.A.'s petition alleges facts sufficient to satisfy this first element.

The second element is the plaintiff's membership in a protected class. Section 213.065 protects the following classes: "race, color, religion, national origin, sex, ancestry, or disability," and the petition specifically alleges that "R.M.A.'s legal sex is male." Petition at ¶ 25. Accordingly, R.M.A.'s petition pleads facts sufficient to satisfy the second element.[7]

---

[6] Section 213.010(15) provides,

> "Places of public accommodation", all places or businesses offering or holding out to the general public, goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public or such public places providing food, shelter, recreation and amusement, including, but not limited to:
>
> …
>
> (e) Any public facility owned, operated, or managed by or on behalf of this state or any agency or subdivision thereof, or any public corporation; and any such facility supported in whole or in part by public funds ….

[7] To state a claim under the MHRA, R.M.A. must allege he is a member of a protected class. § 231.065.2. Here, R.M.A. claims discrimination based on his sex and, therefore, he must allege he is either male or female. R.M.A. alleges he is a member of the male protected class and, under the applicable standard of review for a motion to dismiss, that is sufficient. *Bromwell*, 361 S.W.3d at 398. The dissenting opinion apparently does not believe R.M.A.'s allegation, citing R.M.A.'s allegations that he "is a female to male transgender teenager who was born as a female child and transitioned to living as male" and that he "is transgender and is alleged to have female genitalia." *See Slip Op.* at 2-3. In essence, the dissent suggests R.M.A.'s sex was determined by the genitalia he displayed at birth and can never be changed. But no lesser authority than the General Assembly has acknowledged that one's sex may not remain throughout a person's life what it was identified to be when that person was born. *See* § 193.215.9 ("Upon receipt of a

7

The third element is that plaintiff's sex[8] was a contributing (or motivating) factor in the denial of his use of a public accommodation. § 213.065.2. R.M.A. alleges he was "discriminated against in his use of a public accommodation on the grounds of his sex." Petition at ¶ 50. *See also id.* at ¶ 35 ("Defendants have discriminated and continue to discriminate against Plaintiff R.M.A. based on his sex."); *id.* at ¶ 43 ("Plaintiff received different and inferior access to public facilities because of his sex."). As a result, R.M.A.'s petition pleads sufficient facts to satisfy the third element.[9]

certified copy of an order of a court of competent jurisdiction indicating the sex of an individual born in this state has been changed by surgical procedure and that such individual's name has been changed, the certificate of birth of such individual shall be amended."). In any event, the debate in which the dissenting opinion seeks to engage is premature. For now, the "academic manner" with which this Court must view R.M.A.'s petition and this Court's obligation to construe all of R.M.A.'s allegations favorably and give them their "broadest intendment" require this Court to conclude R.M.A.'s allegation he is male satisfies the second element of a sex discrimination suit under the MHRA. *Smith v. Humane Soc'y of U.S.*, 519 S.W.3d 789, 798 (Mo. banc 2017) (on a motion to dismiss, the petition must be "reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action"); *Bromwell*, 361 S.W.3d at 398 ("this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader").

[8] The dissenting opinion devotes unnecessary time and energy to construing the definition of the term "sex," and more broadly the phrase "discrimination … on the grounds of … sex." *See Slip Op.* at 3-5. But there is nothing ambiguous about this term or the context in which it is used. After thousands of discrimination claims under the MHRA, it seems incredulous that this phrase suddenly – and without explanation – needs construction or that such construction should result in hitherto undiscovered elements. For instance, the dissenting opinion claims, with great confidence, "[t]he MHRA prohibits discrimination on grounds of biological sex," not legal sex. *Slip Op.* at 3. Significantly, however, the MHRA makes no mention of "biological" or "legal" sex. Rather, the MHRA simply uses the word "sex," wholly unqualified. *See* § 231.065. It is telling that − in an opinion emphasizing the significance of adhering to the plain language of the statute − the dissent must add the word "biological" to the statute to reach its result. At this stage, R.M.A. is only required to allege he was discriminated against on the grounds of his sex − which he did. *See* Petition at ¶ 50.

[9] As further support for its position that discrimination on the grounds of sex exclusively refers to biological sex, the dissenting opinion relies on *Pittman v. Cook Paper Recycling Corp.*, 478 S.W.3d 479 (Mo. App. 2015), and numerous federal circuit court cases. *Slip Op.* at 5 n.4. Notably, however, none of these cases define the term "sex" exclusively to mean biological sex as the dissent does. Rather, the cases cited therein hold a plaintiff cannot claim the  protection of

8

The fourth, and last, element is damages.  R.M.A. alleges that, as "a direct result

of the unlawful conduct of Defendants …, Plaintiff R.M.A. has suffered damages."  *Id*. at

¶ 51.  This is sufficient to meet the fourth element.

This same simple and straightforward analysis has also been utilized in federal

court.  For instance, in *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138 (4th Cir. 1996),

the plaintiff, a heterosexual male, alleged "his homosexual male supervisor and other

homosexual male employees at Pizza Hut subjected him to a 'hostile work environment'

in violation of Title VII."  *Id.* at 139.  The district court dismissed the complaint for

failure to state a claim, and the plaintiff appealed.  *Id.* at 139.  The Fourth Circuit

reversed, and in doing so held:

> [W]hile it is true Title VII does not afford a cause of action for
> discrimination based upon sexual orientation, Wrightson does not allege
> that he was discriminated against because he is heterosexual.  He
> specifically alleges in his complaint that he was discriminated against
> "because of his sex, male."  ***The unequivocal allegation that he was***

Title VII based on either his or her (1) sexual orientation *status* − i.e., *Williamson A.G. Edwards and Sons, Inc.*, 876 F.2d 69 (8th Cir. 1989), *Wrightson v. Pizza Hut of Am., Inc.,* 99 F.3d 138 (4th Cir. 1996)*,  Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999), *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757 (6th Cir. 2006)*,* and *Evans v. Georgia Reg'l Hosp.,* 850 F.3d 1248 (11th Cir. 2017) – or (2) transgender *status* − i.e., *Sommers v. Budget Mktg., Inc.,* 667 F.2d 748 (8th Cir. 1982) and *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215 (10th Cir. 2007).  But in a case such as this where the plaintiff claims his discrimination was based on sex, neither set of cases is relevant.  All of the above mentioned cases are distinguishable because, unlike the plaintiffs in those cases*,* R.M.A. does not claim protection under the MHRA based on his transgender status but, rather, based on his sex.  *See* Petition at ¶ 35.  Furthermore, in the same footnote, the dissenting opinion discusses the legislature's failure to adopt various proposed amendments to the MHRA.  But "[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change" and, therefore, this is also an unpersuasive basis upon which to interpret the statute.  *United States v. Craft*, 535 U.S. 274, 287, (2002) (alteration in original) (quotation marks omitted).  *See also Zuber v. Allen*, 396 U.S. 168, 185 (1969) ("Legislative silence is a poor beacon to follow in discerning the proper statutory route.").

> ***discriminated against "because of his sex," which, for purposes of Rule
> 12(b)(6) must be accepted as true, is alone sufficient to withstand Pizza
> Hut's motion to dismiss[.]*** Of course, even had Wrightson alleged that he
> was discriminated against both because he was heterosexual and because he
> was male, he would still state a claim under Rule 12(b)(6). [A] cause of
> action lies even though the discrimination against the employee is not
> "solely" because of the employee's sex, as long as the employee's sex was
> a cause of the discrimination.

*Id*. at 143-44 (internal citations omitted) (emphasis added).

The same is true here. R.M.A.'s petition alleges he is a member of a protected class, he was discriminated against in the use of a public accommodation, his status as a member of a protected class was the basis for the discrimination he suffered, and he sustained damages, as required by section 213.065. At this stage of the proceedings, that is all that is required of R.M.A; therefore, the circuit court should have overruled Defendants' motion to dismiss.

Defendants also argue that, even if the Court finds they engaged in impermissible discrimination on the grounds of sex, they cannot be held liable under section 213.065 because neither Defendant is a "person" under the MHRA. This Court disagrees.

Section 213.065.2 provides: "It is an unlawful discriminatory practice for ***any person,*** directly or indirectly, to refuse, withhold from or deny any other person … any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation … on the grounds of … sex." [Emphasis added.] The definition of the term "person," as used in chapter 213, is set forth in section 213.010(14), which provides a person "includes one or more individuals, corporations, partnerships, associations, organizations, labor organizations, legal representatives, mutual companies,

10

joint stock companies, trusts, trustees, trustees in bankruptcy, receivers, fiduciaries, or other organized groups of persons."

Defendants assert that, because section 213.010(14) does not specifically list "school district," "school board," or, more generally, a "subdivision" of the state, neither of them is a "person" as defined in section 213.010(14) and used in section 213.065.[10] This argument fails because the definition of "person" in section 213.010(14) expressly states that it "***includes***" the individuals and entities listed therein, not that it is limited to them. The state and its political subdivisions need not be explicitly listed to be encompassed in a statute if "an intention to include them is clearly manifest, as where they are expressly named therein, or included by necessary implication." *Carpenter v. King*, 679 S.W.2d 866, 868 (Mo. banc 1984). That is the case here. *Cf.* § 1020(12), RSMo 2016.

"The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other." *Bachtel v. Miller Cty. Nursing Home Dist.,* 110 S.W.3d 799, 801 (Mo. banc 2003*).* "In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes *in pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *State ex rel.*

---

[10]   Defendants also rely on section 213.010(7), which, in relevant part, provides, "'**Employer**'… includes the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state …." Defendants reason that, because the legislature did not explicitly include "the state, or any political or civil subdivision thereof" in the definition of "person," as it did in the definition of "employer" (which is found in a different subsection of the same statute), the legislature intended to exclude those entities from the definition of "person" under section 213.010(14).

11

*Evans v. Brown Builders Elec. Co.,* 254 S.W.3d 31, 35 (Mo. banc 2008) (quotation marks omitted). The MHRA's protections against discrimination in access to public accommodations plainly extend to accommodations owned by the state or its subdivisions. *See, e.g.,* § 213.010(15)(e) (providing a "public accommodation" includes "Any public facility owned … by or on behalf of this state or any agency or subdivision thereof ….").[11] And the MHRA plainly prohibits discrimination by the state or its subdivisions on the basis of sex.[12] *See* § 213.070 ("It shall be an unlawful discriminatory practice … (3) For the state or any political subdivision of this state to discriminate on the basis of race, color, religion, national origin, [or] sex ….."). Accordingly, the state and its subdivisions – including the School District and the School Board − are "persons" as defined by section 213.010(14) and used in section 213.065.

---

[11]   If, as Defendants contend, the state and its subdivisions **do not** constitute a "person," then, even though a state subdivision is the owner or operator of a public accommodation (which, under section 213.010(15)(e), is one of the defining characteristics of a public accommodation), it could not be sued for engaging in discriminatory conduct within that public accommodation. Of course, it would be illogical for the legislature to, on the one hand, ban discrimination in public accommodations and, on the other hand, exempt the owner of the public accommodation from liability for that discrimination. Instead, by construing the entire act together, *Bachtel,* 110 S.W.3d at 801, and considering cognate statutes *in pari materia*, *Evans,* 254 S.W.3d at 35 − as this Court is required to do − the legislature's intent becomes clear: the state and its subdivisions may be held liable for any discriminatory acts they commit within the public accommodations they own and operate. As a result, the state and its subdivisions must be "persons" as defined by section 213.010(14) and used in section 213.065.

[12]   Furthermore, if the legislature intended to exclude schools (including school districts and school boards) from liability under the MHRA, it is unlikely it would have hidden its intent to do so in the definitions of "employer" and "person." *See Whitman v. Am. Trucking Ass'ns.*, 531 U.S. 457, 468 (2001) (The legislature "does not, one might say, hide elephants in mouseholes.").

12

**Conclusion**

For the reasons set forth above, the judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.

_____
Paul C. Wilson, Judge

Draper, Russell, Breckenridge and Stith, JJ., concur;
Fischer, C.J., dissents in separate opinion filed;
Powell, J., concurs in opinion of Fischer, C.J.


R.M.A (A MINOR CHILD), by his )
next friend: )
RACHELLE APPLEBERRY, )
                )
      Appellant, )
                )
v. )      No. SC96683
                )
BLUE SPRINGS R-IV SCHOOL )
DISTRICT and BLUE SPRINGS )
SCHOOL DISTRICT BOARD OF )
EDUCATION, )
                )
      Respondents. )

**DISSENTING OPINION**

I respectfully dissent. The principal opinion holds the analysis is simple and straightforward: the circuit court erred by dismissing R.M.A.'s petition because he alleges his legal sex is male and that Defendants discriminated based on his sex. This analysis is simple and straightforward, but it is also incorrect. R.M.A. alleged he is a *biological* female whose *legal* sex is male. R.M.A. alleged Defendants discriminated unlawfully by barring him from the boys' restrooms and locker room because he "is transgender and is alleged to have female genitalia." The MHRA prohibits sex discrimination and does not bar discrimination based on

transgender status. The petition, therefore, fails to state a claim of unlawful sex discrimination under the MHRA. The judgment should be affirmed.[1]

## Standard of Review

When reviewing a judgment dismissing a petition for failure to state a claim, all allegations in the petition are assumed to be true and are construed in favor of the plaintiff. *Metropolitan St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 915 (Mo. banc 2016). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.* (internal quotation omitted).

## R.M.A.'s Petition

R.M.A. alleged he "is a female to male transgender teenager who was born as a female child and transitioned to living as male" while in the fourth grade. R.M.A. alleged Defendants unlawfully discriminated "based on his sex." Specifically, R.M.A. alleged Defendants prevented him from using the boys' restrooms and locker room because he "is transgender and is alleged to have female genitalia."

When assessing whether a petition states a cause of action, *all* allegations are taken as true. The principal opinion takes some allegations as true, while ignoring those contradicting its preferred conclusion. The principal opinion takes as true R.M.A.'s allegation that his "legal sex is male" while ignoring R.M.A.'s allegation he is a biological female who has "transitioned to living as a male." Similarly, the principal opinion notes R.M.A. alleged discrimination "based on his sex" while ignoring his allegation Defendants discriminated against him because he "is

---

[1] Because R.M.A.'s petition fails to state a claim of sex discrimination under the MHRA, I express no opinion about the principal opinion's unnecessary analysis of whether the Defendants are a "person" subject to suit under the MHRA.

2

transgender and is alleged to have female genitalia." Taking *all* of R.M.A.'s allegations as true, the petition alleges Defendants engaged in unlawful discrimination by barring R.M.A., a biological female who transitioned to living as a male and self-identifies as male, from using the boys' restrooms and locker room because he is transgender. By focusing on R.M.A.'s allegation that his "legal sex" is male while ignoring the allegation he is biologically female who transitioned to living as a male and self-identifies as male, the principal opinion implicitly, and without analysis, incorrectly extends the MHRA beyond biological sex to include claims of discrimination based on transgender status. [2]

## The MHRA prohibits discrimination on grounds of biological sex

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Laut v. City of Arnold*, 491 S.W.3d 191, 205 (Mo. banc 2016) (internal quotations omitted). When the plain language and legislative intent are clear, this Court is bound by the statutory language. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011). "This Court must enforce statutes as written, not as they might have been written." *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 192 (Mo. banc 2006).

Section 213.065.2 of the MHRA prohibits discrimination in any place of public accommodation "on the grounds of … sex." The MHRA does not define the word "sex." When

---

[2] R.M.A. does not construe his own petition as liberally as does the principal opinion. Unlike the principal opinion, R.M.A. does not argue his petition alleges a straightforward and simple claim of sex discrimination based on the fact his legal sex is male. Instead, R.M.A.'s first point on appeal asserts his "petition stated a claim for which relief can be granted, in that the Missouri Human Rights Act prohibits sex discrimination in public accommodation, including discrimination on the basis of gender-related traits." Consistent with his petition, R.M.A. argues the "gender-related traits" forming the basis of his claim of sex discrimination are that he is "transgender and is alleged to have female genitalia." *App. Br.* at 22.

there is no statutory definition, the plain and ordinary meaning of a statutory term can be derived from the dictionary. *Circuit City Stores, Inc. v. Dir. of Revenue*, 438 S.W.3d 397, 400 (Mo. banc 2014). "

The word "sex" means "one of the two divisions of [organisms] esp. human beings respectively designated male or female." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2081 (1993). It also means the "sum of morphological, physiological, and behavioral peculiarities of living beings that subserves biparental reproduction with its concomitant genetic segregation and recombination…that is typically manifested as maleness or femaleness." *Id.* Additionally, the word "sex" refers to "the sphere of interpersonal behavior esp. between male and female," the "phenomena of sexual instincts and their manifestations," and "determin[ing] the sex of an organic being." *Id.* Each of these definitions is premised either directly or indirectly on "sex" as a biological classification of individuals as male or female. None of these definitions state or imply the word "sex" is defined by the fact a person self-identifies as one sex or the other or has transitioned to living as a member of the opposite sex. The plain, ordinary meaning of the word "sex" refers to the biological classification of individuals as male or female.[3] The MHRA, therefore, prohibits discrimination based on the biological classifications of male or female and does not extend to the separate concept of transgender status. *Cf. Pittman v. Cook Paper Recycling Corp.*, 478 S.W.3d 479, 482 (Mo. App. 2015) (holding the "clear meaning" of the phrase "discrimination because of . . . sex" refers only to discrimination based on the fact the

---

[3] The definition of "sex" as referring to the biological distinction between male and female has remained consistent both before and after the 1986 enactment of the MHRA. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2081 (1961) (same); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2081 (2002) (same); AMERICAN HERITAGE DICTIONARY 1187 (1976) ("The property or quality by which organisms are classified according to their reproductive functions").

4

plaintiff is male or female and does not extend to claims of discrimination based on sexual

orientation).[4]

---

[4] The principal opinion asserts it is "incredulous" that the scope of unlawful sex discrimination is "suddenly" in need of interpretation. Respectfully, there is nothing incredible about the need to resolve the question of statutory interpretation raised squarely by R.M.A.'s petition: namely, does the MHRA extend beyond biological sex to include claims of discrimination based on transgender status? As established in *Pittman*, the plain language of the MHRA does not include claims of discrimination based on sexual orientation, nor would it be extended to transgender status. The principal opinion leaves *Pittman* intact as an accurate statement of Missouri law. Similarly, the overwhelming weight of federal circuit court precedent holds federal sex discrimination statutes bar discrimination on the basis of the biological sex classifications of male and female. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999) (Title VII does not extend to discrimination based on sexual orientation); *Wrightson v. Pizza Hut,* 99 F.3d 138, 143 (4th Cir. 1996) ("Title VII does not afford a cause of action for discrimination based upon sexual orientation" because the statutory "prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality") (internal quotation omitted); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (sexual orientation is not a prohibited basis for discriminatory acts under Title VII); *Sommers v. Budget Mktg., Inc.,* 667 F.2d 748, 750 (8th Cir. 1982) (transgender status not a protected class); *Williamson A.G. Edwards and Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) (homosexuality not a protected class); *Etsitty v. Utah Transit Authority*, 502 F.3d 1215, 1222 (10th Cir. 2007) ("In light of the traditional binary conception of sex, transsexuals may not claim protection under Title VII from discrimination based solely on their status as a transsexual"); *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1256 (11th Cir. 2017) (sexual orientation discrimination is not actionable under Title VII").

Further, the General Assembly has expressly distinguished "sex" from the concept of "sexual orientation" while repeatedly declining to adopt bills seeking to amend the MHRA to prohibit discrimination based on sexual orientation or transgender status. For instance, § 556.061(46) defines "Sexual orientation" as "male or female heterosexuality, homosexuality or bisexuality by inclination, practice, identity or expression, or having a self-image or identity not traditionally associated with one's gender." Section 557.035 provides enhanced penalties for certain crimes that "the state believes to be knowingly motivated because of race, color, religion, national origin, sex, sexual orientation or disability of the victim or victims." Section 590.653 authorizes civilian review boards to investigate alleged police misconduct "relating to race, ethnicity, religion, gender, sexual orientation and disability." While recognizing a distinction between "sex" and "sexual orientation," the General Assembly has declined repeatedly to adopt bills seeking to amend the MHRA to prohibit discrimination based on a person's sexual orientation or gender identity. *See* SB 962 (2014), SB 757 (2014), SB 96 (2013), SB 798 (2012), SB 239 (2011), SB 626 (2010), SB 109 (2009), SB 824 (2008), and SB 266 (2007). The principal opinion asserts the General Assembly's repeated rejection of bills seeking to expand the MHRA to include claims based on sexual orientation or gender identity amounts to indeterminate legislative inaction and silence. To the contrary, the fact the General Assembly expressly distinguished "sex" from "sexual orientation" while repeatedly declining proposed amendments to extend the MHRA to include claims based on sexual orientation or gender identity confirms that unlawful discrimination on grounds of "sex" refers only to discrimination based on biological sex. The Court likewise has noted the distinction between sex and sexual orientation by its amendments to Rules 2-2.3 and 4-8.4(g).

## The Petition Fails to State a Claim

To determine whether R.M.A.'s petition states a claim of unlawful sex discrimination under the MHRA, this Court must determine whether the petition invokes "principles of substantive law [that] may entitle the plaintiff to relief." *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008) (internal quotation omitted). The substantive principles of law within the MHRA define the word "sex" as biological sex. Consequently, the petition survives a motion to dismiss only if it alleges that, as a biological female, R.M.A. was deprived of a public accommodation available to biological males.

R.M.A. makes no such allegation. Instead, R.M.A. alleges he is a female who has transitioned to living as a male, and that the Defendants discriminated against him based on his sex by preventing him from using the boys' restrooms and locker room. R.M.A. does not allege that, as a biological female, he was barred from any public accommodation afforded to biological males. Instead, R.M.A.'s allegation of discrimination distills to an acknowledgement that the Defendants excluded him from the boys' restrooms and locker room because he is biologically female. If, as the principal opinion reasons, the relevant allegation is that R.M.A.'s "legal sex" is male,[5] then the majority will have ignored the crux of the petition while discarding the substance of the MHRA. The logical upshot is that the majority is presumably willing to hold the MHRA prohibits schools from maintaining separate restrooms and locker rooms for male and female students. The alternative, of course, is to accept all of R.M.A.'s allegations as true,

---

[5] The suggested jury instruction proposed by the principal opinion presumes R.M.A. could present evidence he was biologically male at the time of the alleged discrimination and that fact was a contributing factor in him being denied access to the boys' restrooms and boys' locker rooms.

6

apply the plain language of the MHRA, and hold R.M.A.'s petition fails to state a claim of sex discrimination.

It is not this Court's role to "question the wisdom, social desirability, or economic policy underlying a statute as these are matters for the legislature's determination." *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 668 (Mo. banc 2010) (internal quotations omitted). Rather, this Court's role is to declare the meaning of the language used in the MHRA consistent with legislative intent.[6] The General Assembly has spoken, and R.M.A.'s petition fails to state a claim of unlawful sex discrimination under the MHRA. The principal opinion errs in concluding otherwise. The judgment should be affirmed.

_____
Zel M. Fischer, Chief Justice

---

[6] As explained more fully in footnote 4 above, the fact the General Assembly has expressly distinguished "sex" from "sexual orientation" and repeatedly declined proposed amendments to extend the MHRA to include claims based on sexual orientation or gender identity demonstrates that unlawful discrimination based on "sex" refers only to discrimination based on a trait unique to one sex and does not extend to claims based on gender identity or transgender status. Even R.M.A.'s own counsel has previously acknowledged the MHRA does not extend to claims of discrimination based on gender identity or sexual orientation. *See* Alex Edelman, *Show-Me No Discrimination: The Missouri Non-Discrimination Act Expanding Civil Rights Protections to Sexual Orientation or Gender Identity*, 79 UMKC L. REV. 741, 743-44 (Spring 2011) (advocating passage of the "Missouri Non-Discrimination Act" to expand the MHRA "in two ways: by adding sexual orientation and gender identity as newly protected traits and by adding protection against discrimination based on a person's presumed or assumed race, color, religion, national origin, ancestry, sex, sexual orientation, age . . . disability, or familial status . . . whether or not the presumption or assumption . . . is correct." (internal quotation omitted).