In the Missouri Court of Appeals
 Western District

MELISSA BOTTORFF-AREY, ON HER )
OWN BEHALF, AND AS PERSONAL )
REPRESENTATIVE OF THE ESTATE )
OF, AND AS PARENT OF ALEXANDER )
DAVID MULLINS, DECEASED, AND )
SUZANNE AND MICHAEL THOMAS, )
ON THEIR OWN BEHALF, AND AS )
PERSONAL REPRESENTATIVE OF ) WD84006
THE ESTATE OF, AND AS PARENTS )
OF JOSHUA MICHAEL THOMAS, )
DECEASED, ) FILED: September 21, 2021
 Appellants,)
v. )
 )
TRUMAN STATE UNIVERSITY; THE )
FRATERNITY OF ALPHA KAPPA )
LAMBDA, INC.; BRANDON )
GROSSHEIM; ALPHA KAPPA )
LAMBDA, XI CHAPTER; LOU ANN )
GILCHRIST; AND TRUMAN STATE )
UNIVERSITY CAMPUS SECURITY )
AUTHORITIES, )
 Respondents. )

 APPEAL FROM THE CIRCUIT COURT OF ADAIR COUNTY
 THE HONORABLE RUSSELL E. STEELE, JUDGE

 BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE,
 ALOK AHUJA, AND ANTHONY REX GABBERT, JUDGES
 Melissa Bottorff-Arey, on her own behalf and as personal representative of

the estate of, and as parent of, Alexander David Mullins, deceased, and Suzanne

and Michael Thomas, on their own behalf and as personal representatives of the

estate of, and as parents of, Joshua Michael Thomas, deceased (collectively,

“Appellants”), appeal the circuit court’s judgment dismissing their claims against

Truman State University (“Truman”) and Lou Ann Gilchrist, vice-president of

student affairs at Truman. Appellants contend their petition stated valid Missouri

Merchandising Practices Act (“MMPA”) and breach of contract claims against

Truman and that their claims against Truman and Gilchrist were not barred by

sovereign immunity. For reasons explained herein, we affirm.

 FACTUAL AND PROCEDURAL HISTORY

 In reviewing a judgment dismissing a petition with prejudice, “we assume

all facts alleged in the petition are true and liberally construe all reasonable

inferences in favor of the plaintiff.” Taylor v. Curators of Univ. of Mo., 602 S.W.3d

851, 853 n.2 (Mo. App. 2020) (citation omitted). The facts alleged in the petition

are as follows:

 Between August 2016 and August 2017, five young adults in Kirksville died

by apparent suicide: Mullins, Thomas, John Doe 1, John Doe 2, and Jane Doe.

Mullins, Thomas, and John Doe 1 were Truman students and Alpha Kappa

Lambda (“AKL”) fraternity members, while John Doe 2 and Jane Doe were local

Kirksville residents. All five had connections to Brandon Grossheim, a Truman

student and AKL member.

 2
 Mullins suffered from depression throughout his life. In February 2016,

while he was attending Truman and living in the AKL house, his depression

symptoms worsened, and he began having regular nightmares and angry moods.

He obtained mental health treatment for the first time through Truman’s

University Counseling Services (“University Counseling”) and reported suicidal

thoughts. In early June 2016, Mullins stopped attending his scheduled counseling

appointments at University Counseling. University Counseling followed up with

emails to Mullins about his missed appointments but did not make further

attempts to reach him or to perform a welfare check and, instead, closed his file in

early July 2016 due to his no-shows. On August 7, 2016, Mullins died by suicide

by hanging in his room at the AKL house. At some point before his death, Mullins

had stopped taking his prescribed depression medication.

 Like Mullins, Thomas also suffered from depression throughout his life, had

thoughts of suicide and a history of prior suicide attempts, and had stopped taking

his prescribed depression medication prior to his death. During the week of

March 13-17, 2017, while on spring break in South Padre Island with some of his

fraternity brothers, Thomas attempted suicide by hanging in front of numerous

other friends, Truman students, and/or fellow AKL members. After this suicide

attempt, Truman did not take any action to intervene or to inform his parents. On

April 6, 2017, Thomas died by suicide by hanging in a storage closet at the AKL

house.

 3
 A third AKL member, John Doe 1, also had issues with depression and

anxiety. John Doe 1 attempted suicide and made suicidal statements during a

party at the AKL house in August 2016. John Doe 1 died by suicide by hanging in

August or September 2016 in his room at the AKL house. John Doe 2 had issues

with depression, had been diagnosed with bipolar disorder, and had attempted

suicide in the past, including in November 2016. On January 27 or 28, 2017, John

Doe 2 died by suicide by hanging in his apartment. Jane Doe allegedly died by

suicide in her apartment on July 5, 2017.

 Grossheim was a member of the AKL fraternity during the same time as

Mullins and Thomas and served as house manager in 2016 and 2017. As house

manager, he had access to all of the fraternity house rooms. Grossheim “found”1

the bodies of Mullins and John Doe 1 following their suicides. Shortly after John

Doe 1’s death, Grossheim was observed with cash, drugs, and clothes obtained

from John Doe 1’s room. Grossheim’s name and contact information was found

on a scrap of paper next to where Thomas’s body was found. Grossheim lived in

the same apartment building and across the hall from John Doe 2. Grossheim

was the manager of that apartment building and had keys to all of the apartments.

Grossheim saw John Doe 2 on the night of his suicide. Grossheim was friends

with and a neighbor to Jane Doe and found her body following her alleged

suicide.

1
 Appellants’ second amended petition put quotes around the word “found” in this allegation.

 4
 Grossheim had a known fascination with death and had proclivities that

others found concerning. He reported that he told his friends that he was “there

for them” and gave them “advice” and “step by step directions” on how to “deal

with depression.” Grossheim’s advice included how to commit suicide.

Grossheim called himself a “superhero” and the “peacemaker” and gravitated

toward “these [depressed] people.” Grossheim reported that he saw himself as a

person that people could go to so he could counsel them and give them advice on

how to “do their own free will.” Grossheim aided or encouraged the deaths of

multiple young people, including Mullins and Thomas.

 Truman and Gilchrist had specialized knowledge that Mullins and Thomas

had extremely vulnerable mental states and suffered from depression.

Additionally, Mullins and Thomas had both reported that they had stopped taking

their depression medication and had thoughts of suicide and/or a history of prior

suicide attempts. Truman and Gilchrist were also aware of Grossheim’s

dangerous proclivities before Mullins’s and Thomas’s deaths and knew he was

violent.

 Neither Grossheim nor any other individual has been criminally charged in

connection with any of the five deaths. Grossheim remains in Kirksville and

spends time with students. Truman and Gilchrist have not warned the Truman

student population about Grossheim’s dangerousness.

 Truman’s website stated, in part, “We make sure you have the resources to

stay healthy, be safe, and feel well.” Truman had a team of professionals, the

 5
Students of Concern, to support students and maintain a safe environment at the

school.2

 After filing their initial petition in July 2019, Appellants filed their second

amended petition in December 2019. In their second amended petition,

Appellants asserted: in Count I, a negligence/premises liability claim against AKL3;

in Count II, violations of the MMPA against Truman and AKL; in Count III, a

negligent misrepresentation claim against AKL; in Count IV, a wrongful death

claim against Grossheim; in Count V, a wrongful death claim against AKL; in

Count VI, a negligence per se claim against Grossheim; in Count VII, a breach of

contract claim against Truman; and in Count VIII, a negligence/breach of

ministerial duty claim against Gilchrist and Truman State Campus Security

Authorities.

 Truman and Gilchrist subsequently filed a motion to dismiss Counts II, VII,

and VIII against them, asserting that the claims were barred by sovereign

immunity and that Appellants failed to state a claim upon which relief could be

granted. After hearing arguments on the motion, the circuit court entered an

order sustaining the motion to dismiss Counts II, VII, and VIII.4 Appellants

2
 Appellants did not allege that either Mullins or Thomas was referred to the Students of Concern.

3
 In the counts against AKL, Appellants named both AKL’s national office and its local chapter.

4
 In the same order, the court sustained AKL’s motion to dismiss Count II against it but overruled
the remainder of its dismissal motion, and the court overruled Grossheim’s motion to dismiss the
claims against him.

 6
attempted to appeal the order; however, we dismissed the appeal for lack of a

final, appealable judgment. The circuit court then entered a judgment dismissing

Appellants’ claims against Respondents in Counts II, VII, and VIII with prejudice

and certifying the judgment for appeal after finding that there was no just reason

for delay. Appellants filed this appeal.5

 STANDARD OF REVIEW

 We review the grant of a motion to dismiss de novo and will consider only

whether the grounds stated in the motion supported the dismissal. Aldridge v.

Francis, 503 S.W.3d 314, 316 (Mo. App. 2016).

 ANALYSIS

 In Points I, II, and III, Appellants challenge all of the grounds upon which the

circuit court could have dismissed Count II, which was their MMPA claim against

Truman. In Count II, Appellants alleged that they purchased consumer

merchandise, specifically, admissions to and/or tuition for courses at Truman, for

personal, family, or household purposes. They further alleged that, in connection

with that purchase, Truman misrepresented and/or made false promises to them

that they would be given the resources to stay healthy, be safe, and feel well; that

they would be supported and be in a safe environment; that they would be

5
 Although the judgment in this case did not dispose of all claims against all parties in the case, it
was in writing, signed by the judge, denominated a “judgment,” and fully resolved all counts
against two parties: Truman and Gilchrist. Therefore, it was “eligible to be certified for
interlocutory appeal under Rule 74.01(b) as [a] ‘final judgment[ ]’ under section 512.020(5)[, RSMo
2016].” Butala v. Curators of Univ. of Mo., 620 S.W.3d 89, 94 (Mo. banc 2021). The circuit court
acted within its discretion to certify the judgment as final for purposes of appeal after finding that
there was “no just reason for delay.” Id.

 7
provided with a course of action, resources, and intervention in the event of a

mental health crisis; and that they would be provided with an emergency

notification system and timely notice of dangerous persons in their midst.

Appellants asserted that Truman’s misrepresentations and/or false promises

constituted unfair practices that were deceptive, false, fraudulent, unethical,

unscrupulous, and/or otherwise offended public policy, and they resulted in

Appellants’ suffering an ascertainable loss of money and/or property. Appellants

requested compensatory and punitive damages.

 In its dismissal motion, Truman contended that Appellants failed to state a

claim on which relief could be granted because Truman is not a “person” subject

to liability under the MMPA, the claim is barred by sovereign immunity, and

Appellants failed to allege that Truman waived its sovereign immunity. Truman

further asserted that Appellants’ claim should be dismissed because Truman

made no specific, discrete promises to Appellants.

 “A motion to dismiss for failure to state a claim on which relief can be

granted is an attack on the plaintiff’s pleadings.” R.M.A. by Appleberry v. Blue

Springs R-IV Sch. Dist., 568 S.W.3d 420, 424 (Mo. banc 2019) (citation omitted). It

is “only a test of the sufficiency of the plaintiff’s petition.” Id. (citation omitted).

We accept the allegations in the petition as true and grant the plaintiffs all

reasonable inferences therefrom. Campbell v. Cty. Comm'n of Franklin Cty., 453

S.W.3d 762, 767 (Mo. banc 2015). We do not weigh the factual allegations to

determine their credibility or persuasiveness. Bromwell v. Nixon, 361 S.W.3d 393,

 8
398 (Mo. banc 2012). “The petition is reviewed in an almost academic manner, to

determine if the facts alleged meet the elements of a recognized cause of action or

of a cause that might be adopted in that case.” Keveney v. Mo. Military Acad., 304

S.W.3d 98, 101 (Mo. banc 2010).

 The MMPA proscribes “deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission

of any material fact” in connection with the sale of “merchandise,” which includes

“any object, wares, goods, commodities, intangibles, real estate or services.” §§

407.020.1 and 407.010(4).6 Section 407.025.1 contains the elements of a private

civil action to assert an MMPA violation:

 Any person who purchases or leases merchandise primarily for
 personal, family or household purposes and thereby suffers an
 ascertainable loss of money or property, real or personal, as a result
 of the use or employment by another person of a method, act or
 practice declared unlawful by section 407.020, may bring a private
 civil action in either the circuit court of the county in which the seller
 or lessor resides or in which the transaction complained of took
 place, to recover actual damages. The court may, in its discretion,
 award punitive damages and may award to the prevailing party
 attorney's fees, based on the amount of time reasonably expended,
 and may provide such equitable relief as it deems necessary or
 proper.

Section 407.010(5) defines the term “person” in the MMPA to mean “any natural

person or his legal representative, partnership, firm, for-profit or not-for-profit

6
 All statutory references are to the Revised Statutes of Missouri, 2016, as updated through the
2017 Supplement.

 9
corporation, whether domestic or foreign, company, foundation, trust, business

entity or association, and any agent, employee, salesman, partner, officer,

director, member, stockholder, associate, trustee or cestui que trust thereof.”

 Appellants argue that Truman admitted in its motion to dismiss that it is a

corporation and, therefore, it fits within the MMPA’s definition of a “person.”

Truman did not admit it was a “corporation”; rather, it admitted that it was a

“public corporation.” Section 174.630 states that Truman’s board of governors is

organized “in the manner provided by law for the board of curators of the State

University of Missouri.” The University of Missouri is “incorporated and created

as a body politic.” § 172.020. Therefore, like the University of Missouri, Truman is

a public corporation. See State ex rel. Ormerod v. Hamilton, 130 S.W.3d 571, 572

(Mo. banc 2004).

 Section 407.010(5)’s definition of a “person” under the MMPA does not

refer to “corporations” generally but, instead, to specifically “for-profit” and “not-

for-profit” corporations. For-profit corporations are governed by Chapter 351,

RSMo, while not-for-profit corporations are governed by Chapter 355, RSMo. As

Truman notes, both of these chapters contain provisions, such as the creation of

the corporation by incorporators (Sections 351.055 and 355.096), dissolution of

the corporation (Sections 351.462-.476 and 355.666-.681), and dissolution by

judicial decree (Sections 351.496 and 355.726), that are inapplicable to statutorily-

created public corporations such as Truman. Additionally, the Secretary of State

has the power and authority to administer Chapters 351 and 355, which includes

 10
the power to administratively dissolve for-profit and not-for-profit corporations. §§

351.660, 351.484, 355.061, 355.706. The Secretary of State does not have this

power over Truman. Public corporations such as Truman do not appear to be

“for-profit” or “not-for-profit” corporations under Chapters 351 and 355,

respectively.7

 Nevertheless, Appellants argue that, even if a public corporation is not

expressly listed in Section 407.010(5)’s definition of a “person,” public

corporations are covered by the definition by “necessary implication.” To support

this argument, they rely on R.M.A., 568 S.W.3d at 429. In R.M.A., the Supreme

Court addressed whether a school district and school board are “persons” that

can be held liable for a Missouri Human Rights Act (“MHRA”) violation. Id. at 429-

30. In answering this question, the Court first looked to the MHRA’s definition of a

“person,” which states that a “person” “includes one or more individuals,

corporations, partnerships, associations, organizations, labor organizations, legal

representatives, mutual companies, joint stock companies, trusts, trustees,

trustees in bankruptcy, receivers, fiduciaries, or other organized groups of

7
 Appellants also argue for the first time in their reply brief that Truman falls under Section
407.010(5)’s definition of a “person” because it is an “entity.” Generally, we “will not address
assertions made for the first time in reply briefs ‘because a respondent has no opportunity to
address the argument.’” Priorities USA v. State, 591 S.W.3d 448, 456 n.12 (Mo. banc 2020)
(quoting Berry v. State, 908 S.W.2d 682, 684 (Mo. banc 1995)). Gratuitously, we note that Section
407.010(5) refers only to “business entities,” which, when used in rules and statutes in other
contexts, is limited to private businesses and not public entities. See, e.g., Haggard v. Div. of
Emp’t Sec., 238 S.W.3d 151, 154 (Mo. banc 2007) (finding that Rule 5.29(c)’s reference to a
“business entity authorized by law” does not include the Division of Employment Security, which
is a state agency); § 107.170.1 (in defining terms for Chapter 107, Bonds of Officers and Contractors
for Public Works, differentiates between a “business entity” and a “public entity,” indicating a
clear distinction between the two).

 11
persons.” Id. at 429 (quoting § 213.010(14)). Because this definition of “person”

states that it “includes” the individuals and entities listed therein and not that it is

limited to them, the Court rejected the defendants’ argument that the statute’s

failure to specifically list “school district,” “school board,” or a “subdivision” of

the state means that those entities are not included in the definition. Id.

 Furthermore, the Court explained that “[t]he state and its political

subdivisions need not be explicitly listed to be encompassed in a statute if ‘an

intention to include them is clearly manifest, as where they are expressly named

therein, or included by necessary implication.’” Id. (quoting Carpenter v. King,

679 S.W.2d 866, 868 (Mo. banc 1984)). Applying the principle that provisions of a

legislative act must be construed together and harmonized, if possible, the Court

found that the plain prohibition against discrimination by the state or its

subdivisions in several MHRA statutes indicates that the state and its

subdivisions, including the school district and school board, are “persons” as

defined by Section 213.010(14). Id. at 429-30.

 Appellants’ reliance on R.M.A. is misplaced. Unlike Section 213.010(14),

Section 407.010(5) does not state that its definition of “person” “includes” the

individuals and entities listed therein. Rather, it states that the definition of

“person” “means” the individuals and entities listed therein. § 407.010(5).

Moreover, Appellants point to no statutes in the MMPA that plainly extend its

provisions to public corporations and, in doing so, render public corporations

included by necessary implication in Section 407.010(5)’s definition of a “person.”

 12
The MMPA does not expressly or impliedly indicate that it applies to public

corporations such as Truman. Therefore, the circuit court properly dismissed

Appellants’ MMPA claim. Points I, II, and III are denied.8

 Because they involve similar issues , we will address Appellants’ Points IV

and V together. In Points IV and V, Appellants contend that the circuit court erred

in dismissing their breach of contract claim against Truman and their negligence

claim against Gilchrist on the ground that the claims improperly attempted to

assert violations of the Clery Act.9 The Clery Act, which is codified at 20 U.S.C. §

1092(f), “is a consumer protection law that aims to provide transparency around

campus crime policy and statistics.” Summary of the Jeanne Clery Act, (Sept. 8,

2021, 9:10 AM), https://www.clerycenter.org/policy-resources/the-clery-act/.

 The Clery Act requires, in part, that colleges and universities that receive

federal funding: (1) disseminate to employees and students public annual security

reports concerning crimes that occur on and around campus and the institution’s

policies and procedures for investigating, reporting, and preventing crimes; (2)

issue timely warnings and emergency notifications to all staff and students when

a crime covered by the Clery Act occurs; and (3) provide prevention and

awareness programs to students and employees and resources to crime victims.

8
 Because we find that the court properly dismissed the MMPA claim on this basis, we need not
address Appellants’ arguments in Points I and III that the court erred in dismissing the MMPA
claim on the grounds that it was barred by sovereign immunity and that Truman made no specific,
discrete promises to Appellants.

9
 The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20
U.S.C. § 1092(f).

 13
20 U.S.C. §§ 1092(f)(1), 1092(f)(3); Clery Act Requirements, (Sept. 8, 2021, 9:10

AM), https://www.clerycenter.org/policy-resources/the-clery-act/.

 The Clery Act is enforced by the Department of Education, which has the

authority to impose a civil penalty on institutions for noncompliance. 20 U.S.C. §

1092(f)(13). The Clery Act expressly provides that there is no private cause of

action for noncompliance with its provisions, that it does not establish a standard

of care, and that evidence regarding compliance or noncompliance with its

provisions is not admissible in any proceedings outside of enforcement

proceedings:

 (14)(A) Nothing in this subsection may be construed to—

 (i) create a cause of action against any institution of higher
 education or any employee of such an institution for any civil
 liability; or

 (ii) establish any standard of care.

 (B) Notwithstanding any other provision of law, evidence regarding
 compliance or noncompliance with this subsection shall not be
 admissible as evidence in any proceeding of any court, agency,
 board, or other entity, except with respect to an action to enforce this
 subsection.

20 U.S.C. § 1092(f)(14). Courts have routinely rejected attempts to assert Clery Act

violation claims in private causes of action. See, e.g., Doe v. Syracuse Univ., 440

F. Supp. 3d 158, 181 (N.D.N.Y. 2020). Courts have also routinely rejected attempts

to recharacterize a Clery Act violation as a state law negligence per se claim. See,

 14
e.g., Emery v. Talladega Coll., 688 Fed. App’x 727, 729-30 (11th Cir. 2017); Z.J. v.

Vanderbilt Univ., 355 F. Supp. 3d 646, 703-04 (M.D. Tenn. 2018).

 Looking first at Appellants’ breach of contract claim in Count VII, Appellants

alleged that Truman made an identifiable contractual promise to its students,

including Appellants, to comply with the Clery Act. Specifically, Appellants

alleged that Truman promised to: (1) issue timely warnings and emergency

notifications in response to reported crimes committed either on or off campus if

the situation constitutes an ongoing or continuing threat to students, staff, and

faculty of the University; (2) issue timely warnings when a Clery crime poses a

serious or on-going threat to the campus community; (3) issue emergency

notifications when an emergency threatening the health and safety of the campus

community occurs on campus; (4) assess whether or not there was a significant

emergency or dangerous situation that warranted a notification to the campus

community. Appellants alleged that Truman breached its contract with Appellants

by failing to comply with these promises with regard to Grossheim, whom they

asserted was a “homicidal person on campus.” Appellants contended that, as a

result of the breach, they suffered significant injuries and damages. They

requested compensatory and punitive damages.

 In their negligence claim in Count VIII, Appellants, referencing duties the

Clery Act imposes on Truman, alleged that Gilchrist, as a Campus Security

Authority, had a legal duty to use ordinary care to notify students of crimes and/or

persons known to be committing criminal activity among students. Appellants

 15
further alleged that Campus Security Authorities such as Gilchrist do not have

discretion to investigate or to pass judgment on whether or not a crime occurred

but must simply report the allegation. Appellants asserted that Gilchrist breached

her duty to students by negligently failing to report criminal activity to the proper

authorities. Appellants contended that, as a direct and proximate result of

Gilchrist’s conduct, they suffered significant injuries and damages, and they

requested compensatory and punitive damages.

 Appellants argue that they did not attempt to assert Clery Act violation

claims in either of these counts. They contend their claim in Count VII was not

that Truman violated the Clery Act, but that Truman contractually agreed with

students to follow the Clery Act and breached its promise by not doing so. The

Supreme Court recently considered a similar breach of contract claim in Hootselle

v. Missouri Department of Corrections, 624 S.W.3d 123, 131 (Mo. banc 2021). In

Hootselle, the Court addressed whether the plaintiffs, a group of corrections

officers, could maintain a private cause of action against the Missouri Department

of Corrections (“MDOC”) to enforce contractual terms that incorporated the Fair

Labor Standards Act (“FLSA”). Id. MDOC contended that the corrections officers

could not maintain such an action because (1) “[a]lthough the FLSA purports to

subject states to suit in state courts without their consent,” the United States

Supreme Court held that such an action was “constitutionally invalid as applied to

states that have not consented to suit”; and (2) the corrections officers’ breach of

 16
contract claim was “merely a disguised attempt to enforce the FLSA” that “would

circumvent the FLSA’s lack of a private cause of action.” Id. at 131-32.

 The Supreme Court disagreed and concluded such actions were

permissible. Id. at 132. The Court distinguished itself from the cases upon which

MDOC relied, Astra USA, Inc. v. Santa Clara County, California, 563 U.S. 110

(2011), and Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003), on

the basis that those cases involved statutes that “did not purport to provide a

private cause of action.” Id. The Court explained that, “[t]o give effect to the

legislatures’ decisions not to provide a private cause of action in those statutes,

the courts [in Astra and Grochowski] declined to let a party bring a state law

breach of contract action that merely attempted to enforce statutory obligations.”

Id. The Court found that, in contrast, because “the FLSA purports to provide for a

private cause of action against states and their agencies,” but that provision is

constitutionally invalid where the state did not consent to suit, there is “no danger

here of nullifying a legislative decision not to grant a private cause of action.” Id.

Thus, the Court concluded that “[t]he concern becomes not one of transgressing a

legislative scheme but one of sovereign immunity and consent to suit.” Id. The

Court further concluded that sovereign immunity did not apply to the corrections

officers’ FLSA claims because they were not freestanding claims of violations of

the FLSA but were breach of contract claims, and “[t]he state waives sovereign

immunity when it enters into an express contract.” Id. at 132-33.

 17
 In contrast to the FLSA, the Clery Act not only does not provide for private

actions against institutions for noncompliance with its provisions, it expressly

states that the Act should not be construed to create such actions or to establish a

standard of care. 20 U.S.C. § 1092(f)(14)(A). Moreover, even if we were to find

that Appellants’ breach of contract claim based on Truman’s alleged

noncompliance with the Clery Act were permissible, the Act disallows the

admission of any evidence of noncompliance, or compliance, with the Act in any

court proceeding. 20 U.S.C. § 1092(f)(14)(B). Thus, Appellants would be unable to

prove this claim. The circuit court properly dismissed Appellants’ breach of

contract claim against Truman in Count VII.

 Next, Appellants argue that their negligence claim in Count VIII, which was

that Gilchrist breached her duty to students to report criminal activity to the

proper authorities at Truman, was not based on the Clery Act because Count VIII

“did not mention the Clery Act.” Appellants’ assertion that Count VIII “did not

mention the Clery Act” is disingenuous. Count VIII cited Truman’s webpage

stating the school’s Clery Act policies (“http://police.truman.edu/clery-act-

information/csa/duties/”), and Count VIII referred to the school’s “Clery office.”

Throughout Count VIII, Appellants referred to the duty to report that Gilchrist, as

one of the Campus Security Authorities, owed to students. “Campus Security

Authority” is a term used in the Clery Act and is defined in 34 C.F.R. 668.46(a)(i)-

(iv). The duty to report that Appellants alleged in Count VIII appears to be a

 18
restatement of the duties imposed on Truman by the Clery Act in 20 U.S.C. §§

1092(f)(1)(J)(i) and 1092(f)(3) and 34 C.F.R. 668.46(e).

 Essentially, in Count VIII, Appellants were attempting to “circumvent the

lack of a Clery Act private right of action by re-characterizing the cause of action

as a state law negligence” claim. See Z.J., 355 F. Supp. 3d at 704. This is not

permissible under 20 U.S.C. § 1092(f)(14)(A). See id.; Emery, 688 Fed. App’x at

730. Moreover, as in their breach of contract claim, Appellants would be unable

to use evidence of Gilchrist’s alleged noncompliance with the Clery Act to prove

this claim. 20 U.S.C. § 1092(f)(14)(B). The circuit court properly dismissed Count

VIII. Points IV and V are denied.

 CONCLUSION

 The judgment is affirmed.

 ____________________________________
 LISA WHITE HARDWICK, JUDGE
ALL CONCUR.

 19