

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| GREEN TREE SERVICING, LLC, | ) | No. ED103906 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | |
| | ) | |
| CHICAGO TITLE INSURANCE | ) | Honorable Darrell E. Missey |
| COMPANY, | ) | |
| | ) | Filed: October 4, 2016 |
| Defendant/Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TITLE PRO, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### Introduction

Green Tree Servicing, LLC ("Appellant") appeals the judgment of the Circuit Court of Jefferson County granting Chicago Title Insurance Company's ("Respondent") motion to dismiss Counts I and II of Appellant's petition seeking damages against Respondent for vexatious refusal to pay and breach of contract. This case is about a dispute over a title insurance contract between the parties, and Respondent's denial of Appellant's claim for coverage under said contract after Appellant's lien, which was insured by Respondent, was wiped out in a foreclosure sale. Appellant notified Respondent of its claim approximately six months after the foreclosure sale. Respondent

argued, and the trial court agreed, that Appellant failed to provide timely notice of its claim. On appeal, Appellant argues that it notified Respondent promptly once it had actual notice of its claim, and that the trial court erred in determining, as a matter of law, that it did not provide timely notice under the contract. We agree.

**Factual Background**

In January, 2004, Borrower granted a home equity deed of trust ("Home Equity Deed of Trust") to Citibank, FSB, for $40,000, which Citibank recorded in March, 2004. On February 10, 2005, America's Wholesale Lender, Appellant's predecessor insured ("Predecessor"), loaned Borrower $166,800 in order to refinance a loan secured by real property located at 407 Sun Field Lane, Festus, Missouri ("Property"). To secure payment of the loan, Borrower executed a Deed of Trust ("Refinance Deed of Trust") secured by the Property in favor of Predecessor on April 12, 2005. Ticor Title Insurance Company, now a subsidiary of Respondent, issued a loan policy of title insurance ("Policy") to insure the Refinance Deed of Trust. The Policy insured Predecessor against "the invalidity or unenforceability of the lien of the insured mortgage upon the title."

Predecessor and Citibank entered into a subordination agreement on February 4, 2005, in which Citibank agreed to subordinate its Home Equity Deed of Trust to the Refinance Deed of Trust. Predecessor retained Title Pro, LLC to handle the closing of the Refinance Deed of Trust. Title Pro agreed to record the subordination agreement, but it failed to do so.

In August 2011, Borrower was in default on the Home Equity Deed of Trust, and Citibank decided to foreclose on the Property. Citibank sent timely notice of foreclosure to Predecessor and other parties with interest in the Property by certified mail. Predecessor did not notify Respondent or its subsidiary of the foreclosure. Predecessor did not attend or otherwise attempt to stop the sale of the Property. CitiMortgage Inc. bought the Property at the foreclosure sale in

2

September 2011 and recorded a trustee's deed. On March 1, 2012, Citibank conveyed the Property

to a bona fide purchaser. The purchaser encumbered the Property with a deed of trust in favor of

FortuneBank on March 2, 2012.

In early March 2012, Predecessor ordered a title report on the Property. On March 7, 2012,

Predecessor received the title report which revealed that its Refinance Deed of Trust had been

extinguished by the 2011 foreclosure sale. Predecessor then requested a copy of the Policy, which

it received on March 13, 2012. On that same date, Predecessor discovered that its subordination

agreement with Citibank not been recorded until March 12, 2012.

On March 14, 2012, Predecessor filed a claim with Respondent for coverage under the

Policy due to Predecessor's interest in the Property being wiped out as a result of the sale of the

Property and its subsequent transfer to a bona fide purchaser. Respondent denied the claim on the

grounds that Predecessor had failed to provide Respondent with prompt notice of the claim as

required by the Policy contract. The Policy contract stated, in relevant part, that:

> The insured shall notify the Company promptly in writing. . . (ii) in case knowledge
> shall come to an insured hereunder of any claim of title or interest which is adverse
> to the title to the estate or interest or the lien of the insured mortgage, as insured,
> and which might cause loss or damage for which the Company may be liable by
> virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured
> mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be
> given to the Company, then as to the insured all liability of the Company shall
> terminate with regard to the matter or matters for which prompt notice is required;
> provided however, that failure to notify the Company shall in no case prejudice the
> rights of any insured under this policy unless the Company shall be prejudiced by
> the failure and then only to the extent of the prejudice.

Furthermore, under the Policy contract, "knowledge" was defined as "actual knowledge, not

constructive knowledge or notice which may be imputed to an insured by reason of the public

records. . . or any other records which impart constructive notice."

In June 2013, Predecessor assigned "all beneficial interest" under the Refinance Deed of

Trust to Appellant. In May 2014, Appellant filed suit against Respondent and Title Pro, LLC. Count I of Appellant's petition was a vexatious refusal claim, Count II was a breach of contract claim, and Count III was a negligence claim. In Count I and Count II, Appellant alleged that Respondent had refused to pay Predecessor's claim without reasonable cause or excuse and in violation of the Policy contract. Respondent filed a motion to dismiss Counts I and II pursuant to Rule 55.27(a)(6)[1] for failure to state a claim upon which relief can be granted. In September 2014, the trial court granted Respondent's motion to dismiss Counts I and II, finding that "[Appellant] did not timely notify [Respondent] of its claim as required by the contract of insurance and therefore is barred from recovery." Appellant filed a motion to reconsider, which the trial court denied. The trial court granted Respondent's motion for summary judgment on Count III of the petition in December 2015. Appellant then filed its Notice of Appeal in January 2016, appealing the trial court's dismissal of Counts I and II.

**Standard of Review**

We review a trial court's grant of a motion to dismiss de novo. *In re Estate of Austin*, 389 S.W.3d 168, 171 (Mo. banc 2013). "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of plaintiff's petition; it assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." *Otte v. Edwards*, 370 S.W.3d 898, 900 (Mo. App. E.D. 2012)(quoting *Coons v. Berry,* 304 S.W.3d 215, 217 (Mo. App. W.D. 2009). We make no attempt to weigh any facts alleged as to whether they are credible or persuasive, instead, we review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *State ex rel. Henley v. Bickel,* 285 S.W.3d 327, 329 (Mo. banc 2009).

---

[1] All references to "Rules" are to Missouri Supreme Court Rules (2016).

**Discussion**

The elements of an action for vexatious refusal to pay are set forth in § 375.420 RSMo 2016:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Therefore, to establish its claim for vexatious refusal to pay, Appellant was required to plead: (1) it had an insurance policy with Respondent; (2) Respondent refused to pay; and, (3) Respondent's refusal was without reasonable cause or excuse. *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006).

To make a claim for breach of contract, Appellant must demonstrate: (1) the existence of a contract and the terms of that contract; (2) that Appellant performed or tendered performance; (3) that Respondent did not perform; and (4) that Appellant was thereby damaged. *Shirley's Realty, Inc. v. Hunt*, 160 S.W.3d 804, 807 (Mo. App. W.D. 2005) (quoting *Western Sur. Co. v. Intrust Bank, N.A.,* 20 S.W.3d 566, 571 (Mo. App. W.D. 2000)).

Appellant argues that it properly pleaded the required elements for Vexatious Refusal and

5

Breach of Contract, and therefore the trial court erred in dismissing Counts I and II. With regard to Count I (vexatious refusal), Appellant pleaded that it had "an insurance policy with Respondent," that "Respondent denied coverage of [Appellant's] claim . . . and has continued to deny coverage," and that Respondent "had no reasonable cause or excuse to deny [Appellant's] claim for coverage." With regard to Count II (breach of contract), Appellant pleaded that Predecessor "bought the Policy and [Respondent] agreed to insure title pursuant to the policy," that Respondent "agreed to insure Appellant against loss incurred by failure to subordinate the Home Equity Deed of Trust," that Respondent "breached the Policy by failing to pay [Appellant's] claim pursuant to the Policy terms," and that Appellant was damaged in the amount of $166,800 by Respondent's breach.

Therefore, on its face, Appellant's petition alleges the required elements of both vexatious refusal and breach of contract. However, Respondent contends that the undisputed material facts as pleaded by Appellant demonstrate that Predecessor failed to satisfy the notice requirement in the Policy because it waited until after Citibank's foreclosure sale to notify Respondent of its claim. Respondent argues that it was prejudiced as a matter of law by Predecessor's failure to notify it. Appellant asserts that its petition demonstrated that Predecessor complied with the Policy's notice requirement because Appellant pleaded that Predecessor notified Respondent within seven days of gaining actual knowledge that its Refinance Deed of Trust was recorded junior to Citibank's Home Equity Deed of Trust.

Our review over Appellant's claim of error is a two-step process. First, we must determine whether, as a matter of law, Appellant failed to comply with the Policy's notice requirement. *See Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 9-10 (Mo. banc 1995). The determination of whether an insured provided prompt notice to its insurer is normally an issue of fact, but it may

6

become a question of law where "all reasonable persons would conclude that notice or proof was not given or made within [a reasonable time]." *Id.* at 14. Next, we must determine whether, as a matter of law, Respondent was prejudiced by Appellant's failure to comply. The burden of proof regarding compliance with the Policy's notice requirement is on the Appellant insured, and the burden of proof regarding prejudice is on the Respondent insurer. *See Id.* at 11.

Appellant argues that Predecessor complied with the Policy's notice requirement because the Policy required Predecessor to notify Respondent only after Predecessor had "actual" knowledge, rather than "constructive" knowledge, of an adverse claim. Appellant asserts that because Predecessor and Citibank had entered into a subordination agreement, the notice of foreclosure that Predecessor received "would only lead it to believe Citibank, a junior lienholder, was foreclosing and that [Predecessor's] interest had priority over Citibank's . . . [and] would therefore retain its first priority status following the foreclosure sale." Appellant argues that Predecessor lacked actual knowledge that the subordination agreement had not been recorded prior to the foreclosure sale, and as a result it lacked actual knowledge that the sale would pose a threat to its interest in the Property. Appellant asserts that it was not until it received title report for the Property on March 7, 2012, that it had actual knowledge that the subordination agreement had not been recorded, and therefore actual knowledge of a claim under the Policy.

Respondent contends that Appellant's argument ignores the dangers inherent in a foreclosure sale conducted by a junior lienholder, and that Predecessor's claim arose as soon as Citibank provided notice of its intent to foreclose upon the insured property. Respondent argues that "any prudent senior lienholder," in receipt of notice of foreclosure sale by a purported junior lienholder, should always intervene and inquire as to the nature of the impending sale. Failure to do so, Respondent argues, risks loss of preservation of the lien and interest in the property because

7

the junior lienholder might attempt to transfer the property to a bona fide purchaser, wiping out all liens on the property.

While Respondent is correct that a transfer to a bona fide purchaser would wipe out existing liens on the Property, in order to be considered a bona fide purchaser, the purchaser would have had to purchase the Property without knowledge, actual or constructive, of prior liens. *See Pleasant Hollow Homeowners Ass'n v. Webster* 285 S.W.3d 421, 424 (Mo. App. E.D. 2009). Therefore, in the present case, if the subordination agreement had been recorded promptly, a purchaser at Citibank's foreclosure sale would have had notice of Predecessor's superior position and would have taken the Property subject to Predecessor's lien as a matter of law. *See Id.* We do not agree with Respondent's assertion that, as a general rule, "any prudent senior lienholder" must always intervene and inquire into the nature of every foreclosure by a junior lienholder, because a senior lienholder's interest is not at risk during a foreclosure sale if it has been properly recorded.

Having rejected Respondent's argument, we cannot say that Predecessor failed to satisfy the Policy's notice requirement as a matter of law. The determination of whether an insured provided notice to its insurer within a reasonable time is "typically an issue of fact for a jury," and it only becomes a question of law when "all reasonable persons would conclude that notice or proof was not given or made within that time." *Tresner,* 913 S.W.2d at 14. Taking Appellant's averments as true, we cannot conclude that all reasonable persons would agree that Predecessor failed to provide notice to Respondent within a reasonable time pursuant to the Policy. Accordingly, the trial court erred in determining, as a matter of law, that Predecessor did not timely

notify Respondent of its claim.[2]

## Conclusion

We reverse the trial court's dismissal of Appellant's Counts I and II and remand the matter to the trial court for further proceedings consistent with this opinion.

_____
Philip M. Hess, Chief Judge

Lawrence E. Mooney, J. and
Gary M. Gaertner, Jr., J.  concur.

---

[2] Because the trial court erred in determining that Predecessor did not timely notify Respondent of its claim as a matter of law, we need not consider whether Respondent was prejudiced by Predecessor's alleged failure to comply with the Policy's notice requirement.