In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

CHRISTINE MURRAY-KAPLAN, ) ED108662
 )
 Appellant, ) Appeal from the Circuit Court
 ) of St. Louis County
v. ) 18SL-CC03895
 )
NEC INSURANCE, INC., GREAT NORTHERN ) Filed: January 26, 2021
INSURANCE COMPANY, AND JOSEPH )
BOSSE, )
 )
 Respondents. )

 Christine Murray-Kaplan (Kaplan) appeals from the trial court’s judgment dismissing her

petition alleging claims of breach of contract, vexatious refusal, and unjust enrichment against

Great Northern Insurance Company (GNIC), and claims of breach of fiduciary duty and

negligence against NEC Insurance, Inc. (NEC), and Joseph Bosse (Bosse). We reverse and

remand.

 BACKGROUND

 Kaplan maintained a decade-long professional relationship with Bosse and NEC, who

served as Kaplan’s agent and broker to procure insurance policies for her. In 2012 and 2013,

Bosse and NEC acquired two insurance policies from GNIC on Kaplan’s behalf: a Homeowner

Insurance Policy and Excess Liability Policy (GNIC Policies). The GNIC Policies provided

Kaplan with personal liability coverage as follows:
 We cover damages a covered person is legally obligated to pay for personal injury
 or property damage which take place anytime during the policy period and are
 caused by an occurrence, unless stated otherwise or an exclusion applies.
 Exclusions to this coverage are described in Exclusions.

 The GNIC Policies define an “occurrence” as, “an accident or offense to which this

insurance applies and which begins within the policy period.” “Personal injury” is defined as,

“the following injuries, and resulting death: bodily injury; shock, mental anguish, or mental

injury; false arrest, false imprisonment, or wrongful detention; wrongful entry or eviction;

malicious prosecution or humiliation; and libel, slander, defamation of character, or invasion of

privacy.” “Property damage” is defined as, “physical injury to or destruction of tangible

property, including the loss of its use. Tangible property includes the cost of recreating or

replacing stocks, bonds, deeds, mortgages, bank deposits, and similar instruments, but does not

include the value represented by such instruments.” The Policies set forth the following

exclusion:

 Intentional Acts. We do not cover any damages arising out of an act intended by
 any covered person to cause personal injury or property damage, even if the injury
 or damage is of a different degree or type than actually intended or expected. An
 intentional act is one whose consequences could have been foreseen by a reasonable
 person. But we do cover such damages if the act was intended to protect people or
 property unless another exclusion applies.

 The GNIC Policies require covered persons to “. . . notify us or your agent as soon as

possible” after a loss.

 Probate Case

 On August 6, 2013, Kaplan was served with a petition (Probate Petition) filed against her

in St. Louis County (Probate Case). The Probate Petition alleged, inter alia, a claim for tortious

interference with the inheritance of the children of Kaplan’s deceased husband, and a claim for

 2
“Infliction of Emotional Distress on Behalf of Julie Only” (IED Claim). 1 The Probate Petition

alleged that Kaplan wrongfully liquidated trust property and wrongfully transferred trust

property such as decedent’s home, to the detriment of decedent’s children.

 In support of Julie’s IED Claim, the Probate Petition alleged that on December 30, 2012,

Kaplan screamed at Julie and created a “major commotion” to keep Julie out of the house when

she attempted to fetch clothing from the house. Kaplan called her hospitalized husband (Julie’s

father) to help Kaplan evict Julie from the home. Kaplan then called the Ladue police, who

came and forced Julie out of the home. Two weeks later, Kaplan obtained a restraining order

against Julie, allegedly based on “totally false statements” regarding confrontations and threats

of injuries made by Julie. On April 18, 2013, Julie appeared at Kaplan’s office attempting to

take framed pictures and other items. Kaplan alerted the St. Louis police, who removed Julie

from Kaplan’s office, then detained and interrogated her for one hour. These events were

alleged to have traumatized Julie and caused her severe emotional distress, requiring medical

attention and prescription medication for severe depression. Pursuant to the GNIC Policies,

Kaplan claims she properly notified Bosse and NEC of the Probate Petition and described the

claims brought against her.

 On January 16, 2015, an amended petition (Amended Probate Petition) was filed in the

Probate Case. The Amended Probate Petition included additional specific allegations of

Kaplan’s wrongdoing: Kaplan deprived decedent’s children of access to their family home;

Kaplan caused decedent to transfer his tangible personal property to his trust; Kaplan diminished

the value of the Kaplan Real Estate Company; Kaplan obtained physical possession of the

Kaplan Real Estate Company offices; and Kaplan lost the water rights to Arizona properties held

1
 For ease of reference, the parties referred to Julie Salomon by her first name in their briefing. We follow their
lead. No disrespect or familiarity is intended.

 3
in trust. Kaplan asserts she again notified Bosse and NEC of the Amended Probate Petition and

described the claims brought against her.

 GNIC did not defend Kaplan from the claims brought against her in either the Probate

Petition or the Amended Probate Petition. Kaplan sent a letter directly to GNIC in March 2017,

informing GNIC of the claims brought against her in the Amended Probate Petition. On June 30,

2017, GNIC refused to provide coverage for the claims brought against Kaplan. GNIC declined

to defend Kaplan on following grounds: (1) Kaplan provided insufficient notice; and (2) the

GNIC Policies did not cover the claims brought against Kaplan in the Amended Probate Petition.

Ultimately the Probate Case was resolved between Kaplan and the decedent’s children while the

matter was pending on appeal. The case was dismissed with prejudice on March 7, 2018.

 Insurance Case

 On October 12, 2018, Kaplan filed her petition against GNIC, NEC, and Bosse (Insurers)

with the Circuit Court of St. Louis County. On April 25, 2019, she filed her First Amended

Petition, setting forth claims against GNIC for breach of contract and vexatious refusal (Count I),

and for unjust enrichment (Count II). The First Amended Petition also stated claims against

Bosse and NEC for breach of a fiduciary duty (Count III) and negligence (Count IV). Kaplan

attached the following documents to her First Amended Petition: (1) the Probate Petition; (2)

trust documents pertaining to the Probate Case; (3) the Amended Probate Petition; and (4) the

GNIC Policies.

 On May 24, 2019, Bosse and NEC filed a Motion to Dismiss Counts III and IV of the

First Amended Petition pursuant to Rule 55.27(a)(6). 2 On June 7, 2019, GNIC filed a Motion to

Dismiss Counts I and II of the First Amended Petition pursuant to Rule 55.27(a)(6). GNIC filed

2
 All Rule references refer to the Missouri Supreme Court Rules.

 4
a memorandum in support of its motion and attached six exhibits: (a) the GNIC Policies; (b) a

January 27, 2015 order by the probate court in the Probate Case; (c) a May 14, 2015 order by the

probate court in the Probate Case; (d) a notice of appeal dated October 11, 2016, from the

Probate Case; (e) a March 6, 2018 order from this Court granting dismissal of an appeal from the

Probate Case; and (f) a March 7, 2018 order from the probate court dismissing the remaining

claims in the Probate Case with prejudice.

 On November 5, 2019, the trial court heard arguments on both motions to dismiss. One

week later, on November 12, the trial court entered judgment, granting GNIC, NEC and Bosse’s

motions to dismiss without explanation.

 This appeal follows.

 DISCUSSION

 Kaplan raises nine points on appeal: Points I through III address the trial court’s

dismissal of Counts I and II of her First Amended Petition against GNIC, and Points IV through

IX address dismissal of Counts III and IV against NEC and Bosse. We organize our discussion

by conceptually grouping the following Points on Appeal: (1) Points I, VIII, and IX pertain to

coverage under the GNIC Policies; (2) Points IV and V address the statute of limitations; (3)

Points VI and VII regard Bosse’s duty to Kaplan; (4) Point II addresses Kaplan’s alternative

claim for unjust enrichment; and (5) Point III addresses Kaplan’s claim for vexatious refusal.

 Standard of Review

 A motion to dismiss for failure to state a claim is solely a test of the adequacy of the

plaintiff’s petition. City of Lake St. Louis v. City of O’Fallon, 324 S.W.3d 756, 759 (Mo. banc

2010). A court reviews the petition “in an almost academic manner, to determine if the facts

alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in

 5
that case.” Id. (quoting Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 306 (Mo. banc 1993)). A

court must accept the petition’s properly pleaded facts as true, giving the pleadings their broadest

intendment, and construe all allegations favorably to the pleader. See R.M.A. by Appleberry v.

Blue Springs R-IV Sch. Dist., 568 S.W.3d 420, 424 (Mo. banc 2019). The court may not weigh

the factual allegations to determine whether they are credible or persuasive. Id.

 Courts may consider only the facts contained in the petition when addressing affirmative

defenses raised in a motion to dismiss. City of Lake St. Louis, 324 S.W.3d at 763-64. Trial

courts may dismiss a petition based on an affirmative defense only if the face of the petition

clearly and without exception establishes the failure of that cause of action. Cf. City of Lake St.

Louis, 324 S.W.3d at 764 (statute of limitations); City of Ellisville v. Lohman, 972 S.W.2d 527,

530 (Mo. App. E.D. 1998) (statute of limitations); Allen v. Titan Propane, LLC,. 484 S.W.3d

902, 905 (Mo. App. S.D. 2016) (statutory immunity); Sheffield v. Matlock, 587 S.W.3d 723, 733

(Mo. App. S.D. 2019) (res judicata).

 Appellate courts review the trial court’s decision granting a motion to dismiss de novo.

City of Lake St. Louis, 324 S.W.3d at 759 (citing Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo.

banc 2008)); see also R.M.A. by Appleberry, 568 S.W.3d at 424. Our review is limited to the

grounds raised in the motion to dismiss itself, and we may not consider matters outside the

pleadings. City of Lake St. Louis, 324 S.W.3d at 759.

 In violation of Rule 84.04(e), GNIC, NEC and Bosse fail to include the applicable

standard of review in their briefs. The omission explains their inappropriate reliance upon facts

not included in the First Amended Petition, as well as inferences inimical to Kaplan’s claim.

Viewing the First Amended Petition in this light would require the court to make the kinds of

credibility and persuasiveness determinations that are strictly prohibited by our standard of

 6
review. See City of Lake St. Louis, 324 S.W.3d at 759. Moreover, this deficiency has been

criticized by Missouri courts. See e.g., Hensley v. Shelter Mut. Ins. Co., 210 S.W.3d 455, 464-65

(Mo. App. S.D. 2007) (“By framing and arguing the issue in this manner, Shelter sets itself free

from the applicable standard of review. . . . Unfortunately for Shelter, we do not have such

freedom and are confined in our analysis to the applicable standard of review.”); Myers v. Farm

Bureau Town & Country Ins. Co. of Missouri, 345 S.W.3d 341, 346 (Mo. App. S.D. 2011)

(addressing an insurer’s failure to apply the correct standard of review in determining whether its

refusal to pay was without reasonable cause or excuse).

 Points I, VIII & IX

 In Point I, Kaplan argues the trial court erred in entering the November 12, 2019

judgment dismissing her First Amended Petition because it properly stated a claim for breach of

an insurance contract. GNIC disagrees, and asserts the Probate Petition and Amended Probate

Petition (Probate Petitions) did not give rise to the potential for coverage under the GNIC

Policies, and GNIC therefore had no duty to defend or indemnify Kaplan. The outcome of

Points VIII and IX – relating to NEC and Bosse’s failure to notify GNIC of the Probate Petitions

– depend upon this initial coverage dispute. The question presented is whether Kaplan’s First

Amended Petition properly stated a claim for breach of contract.

 Analysis

 A breach of contract action includes the following essential elements: (1) the existence

and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the

contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.

Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. banc 2010).

 7
 Kaplan’s First Amended Petition alleges: (1) the GNIC Policies constituted a valid

contract between Kaplan and GNIC, and under the GNIC Policies, GNIC must pay Kaplan for

any liability for personal injury or property damage caused by her and for costs incurred

defending claims against her for personal injury or property damage; (2) Kaplan complied with

all obligations under the GNIC Policies; (3) the GNIC Policies provided Kaplan with coverage

for the claims brought against her in the Probate Case; (4) GNIC breached the contract by failing

to defend Kaplan in the Probate Case and by declining to cover any liability she incurred from

the claims in the Probate Case; and (5) as a result of GNIC’s breach, Kaplan sustained damages

amounting to the cost of defending herself against the Probate Case and the payment under the

settlement agreement.

 While the First Amended Petition establishes the essential elements of a claim for breach

of contract, GNIC argues it nonetheless fails to state a claim because GNIC had no duty to

defend or indemnify Kaplan for the claims raised in the Probate Case, and therefore could not

have breached those duties. GNIC asserts Kaplan’s First Amended Petition did not plead facts

supporting her claim of coverage under the GNIC Policies.

 An insurer has a duty to defend an insured when the insured is exposed to potential

liability to pay based on the facts known at the outset of the case, no matter how unlikely it is

that the insured will be found liable and whether or not the insured is ultimately found liable.

McCormack Baron Mgmt. Servs., Inc., v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 171 (Mo.

banc 1999) (McCormack). To extricate itself from a duty to defend the insured, the insurer must

prove that there is no possibility of coverage. Id. The duty to defend potentially insured claims

arises even though claims beyond coverage may also be present. See Truck Ins. Exch. v. Prairie

Framing, LLC, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005). Thus, the insurer’s duty to defend

 8
compels it to defend cases including uncovered claims even though it is highly unlikely the sole

avenue of potential coverage will be ultimately proven. To determine whether GNIC had a duty

to defend, we look to the allegations and claims contained in the Probate Petitions, as well as

facts GNIC knew or could have ascertained from a reasonable investigation, to determine if

those facts are potentially within the scope of the policy’s coverage. See id.

 In reviewing a motion to dismiss, our role is not to determine whether Kaplan’s First

Amended Petition proves GNIC had a duty to defend and breached it. Rather, the relevant

question is whether the First Amended Petition alleges facts that, if eventually proven, would

entitle Kaplan to relief on her claim that GNIC had a duty to defend and breached it. This

distinction clarifies why courts must take the petition’s allegations as true, grant them their

broadest possible intendment, and construe all allegations favorably to the pleader. See R.M.A.

by Appleberry, 568 S.W.3d at 424. Accordingly, we turn to Kaplan’s First Amended Petition to

determine whether it properly alleged facts showing that the GNIC Policies could possibly cover

claims raised against her in the Probate Petitions.

 The GNIC Policies “cover damages a covered person is legally obligated to pay for

personal injuries or property damage . . . caused by an occurrence.” GNIC does not dispute

Kaplan is a “covered person” under the GNIC Policies. Personal injuries are defined to include

mental anguish or mental injury. The IED Claim in the Probate Petitions alleged Kaplan caused

Julie to suffer emotional distress. GNIC argues that while those allegations may constitute

“personal injuries,” those personal injuries were not caused by an “occurrence.” The GNIC

Policies define an “occurrence” as either an accident or offense. The GNIC Policies do not

define “offense.”

 9
 The interpretation of an insurance policy is a question of law. McCormack, 989 S.W.2d

at 171. When determining the meaning of terms in an insurance policy, we do not use technical,

philosophical, or scientific meanings of the terms, nor a restricted meaning acquired in legal

usage. Id. Rather, we apply the meaning which would be attached by an ordinary person of

average understanding if purchasing insurance. Id. (quoting 13 John A. Appleman & Jean

Appleman, Insurance Law and Practice, section 7384 (rev. vol. 1976)).

 In McCormack, our Supreme Court discussed the possible meanings of the word

“offense,” when it is undefined by, but used in, a liability insurance policy:

 The word “offense” cannot be read to limit coverage only to a particular “cause of
 action” or “claim.” The word “offense” simply does not have this meaning in either
 common usage or legal usage. For ordinary use, the word “offense” is defined in
 Webster’s as “something that outrages the moral or physical senses,” “the act of
 attacking,” “the act of displeasing, affronting, or angering,” or “an infraction of
 law.”

McCormack, 989 S.W.2d at 171 (emphasis in original). The question is whether an ordinary

person of average understanding if purchasing insurance would understand the allegations in the

Probate Petition constitute an “offense.” The Probate Petition alleged, inter alia, Kaplan:

evicted Julie from her childhood home; obtained a restraining order against Julie; evicted Julie

from Kaplan’s office when Julie attempted to retrieve framed photos and other sentimental

items; and directed the St. Louis police to detain and interrogate Julie the day after her father’s

death. These allegations could reasonably constitute “something that outrages the moral or

physical senses” or “the act of displeasing, affronting, or angering.” McCormack, 989 S.W.2d at

171.

 We find the allegations fall squarely within the ordinary meaning of “offense.” The

allegations contained in the First Amended Petition – that Kaplan’s conduct caused Julie

emotional distress – are an “occurrence” as used in the GNIC Policies. The GNIC Policies could

 10
potentially cover the allegations in the Probate Petitions because the IED Claim alleged Kaplan

was liable for personal injuries caused by an occurrence. Thus, Kaplan’s First Amended Petition

properly stated a claim for coverage under the GNIC Policies because the Probate Petition’s IED

Claim was potentially covered by the GNIC Policies.

 GNIC next argues that Kaplan’s claims are barred by a policy exclusion for claims

arising from intentional acts. However, as a threshold matter, we must first address whether the

trial court, on a motion to dismiss, could properly consider GNIC’s argument that a policy

exclusion applied. See Allen, 484 S.W.3d at 905.

 Every defense to a claim asserted in a pleading must be asserted in a responsive pleading

except for a limited set of defenses that may (at the option of the pleader) be asserted by motion.

Rule 55.27(a). All affirmative defenses must be set forth in a pleading containing a short and

plain statement of the facts showing that the pleader is entitled to the defense. Rule 55.08. A

narrow exception to the pleading requirement exists whereby the defendant may file a motion to

dismiss for failure to state a claim under Rule 55.27(a)(6) when it appears from the face of the

petition that an affirmative defense is applicable. Sheffield, 587 S.W.3d at 733 (quoting Evans v.

Empire Dist. Elec. Co., 346 S.W.3d 313, 317 (Mo. App. W.D. 2011)). Such a motion may be

granted only where the affirmative defense is “irrefutably established” by the face of the petition

itself. Titan Propane, LLC, 484 S.W.3d at 906 (quoting McLeod v. Marion Labs., Inc., 600

S.W.2d 656, 657 (Mo. App. W.D. 1980)).

 In Missouri, a defense based on an exclusion to an insurance policy is an affirmative

defense, and the insurer has the burden of establishing the exclusion. Century Fire Sprinklers,

Inc. v. CAN/Transp. Ins. Co., 23 S.W.3d 874, 879 (Mo. App. W.D. 2000). Therefore, motions to

 11
dismiss arguing a lack of coverage because of a policy exclusion may be granted only if the face

of the petition “irrefutably establishes” the policy exclusion.

 The GNIC Policies’ intentional acts exclusion has a single exception: it does not exclude

liability arising from intentional acts if the act was “intended to protect people or property.”

Kaplan’s First Amended Petition alleges, “[t]he claim for infliction of emotional distress arose

out of alleged actions Kaplan took to protect property, namely property located at 9755 Old

Warson Road, St. Louis, MO, including seeking a restraining order against the plaintiff in the

[Probate Case].” Taken as true for purposes of reviewing the motions to dismiss, this allegation

would provide Kaplan with coverage for the IED Claim brought against her in the Probate Case

because it avers Kaplan acted to protect property. The GNIC Policies clearly cover actions taken

to protect property. GNIC’s affirmative defense of a policy exclusion for intentional acts is not

irrefutably established by the face of the First Amended Petition. Thus, the First Amended

Petition properly states a claim for breach of contract because the IED Claim was potentially

covered under the GNIC Policies and was not barred by the intentional acts exclusion. Point I is

granted.

 Points VIII and IX challenge the trial court’s dismissal of Counts III and IV of Kaplan’s

First Amended Petition. NEC and Bosse’s argument against Points VIII and IX rely upon the

coverage arguments asserted above. For the same reasons discussed above, Points VIII and IX

are granted.

 Points IV & V

 In Points IV and V, Kaplan argues the trial court erred in dismissing Counts III and IV of

her First Amended Petition because they were not barred by the five-year statute of limitations.

 12
NEC and Bosse disagree with this claim and argue the First Amended Petition failed to allege

facts showing that Kaplan’s cause of action arose prior to October 12, 2013.

 Analysis

 When an affirmative defense is asserted in a motion to dismiss, such as a statute of

limitation, the petition may not be dismissed unless it clearly establishes “on its face and without

exception” that it is barred. Sheehan v. Sheehan, 901 S.W.2d 57, 59 (Mo. banc 1995); City of

Lake St. Louis, 324 S.W.3d at 764. The statute of limitations on claims of negligence and breach

of fiduciary duty are five years pursuant to Section 516.120(4). 3 Ostermueller v. Potter, 868

S.W.2d 110, 111 (Mo. banc 1993) (negligence); Northern Farms, Inc. v. Jenkins, 472 S.W.3d

617, 625 (Mo. App. W.D. 2015) (breach of fiduciary duty). Under Section 516.100, “the cause

of action shall not be deemed to accrue when the wrong is done or the technical breach of

contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of

ascertainment[.]”

 The original, underlying Probate Petition was filed on August 6, 2013. GNIC did not

deny coverage until June 30, 2017. Kaplan filed this action on October 12, 2018. NEC and

Bosse assert Kaplan’s cause of action accrued, if ever, before October 13, 2013. However, this

assertion is insufficient to meet the demanding standard for granting a motion to dismiss on

account of a statute of limitations – that it is clearly established by the face of the petition. See

Sheehan, 901 S.W.2d at 59; City of Lake St. Louis, 324 S.W.3d at 764. Kaplan’s First Amended

Petition does not clearly establish on its face and without exception that her claims accrued on or

before October 13, 2013. See Nuspl v. Missouri Med. Ins. Co., 842 S.W.2d 920, 923 (Mo. App.

E.D. 1992) (holding that an insured’s cause of action against their insurer accrued when coverage

3
 All statutory references are to RSMo (2016), unless otherwise indicated.

 13
was denied). It does not clearly establish that the damage resulting from NEC and Bosse’s

alleged breach of their duty to notify GNIC was sustained or capable of ascertainment on or

before October 13, 2013. Therefore the trial court could not have properly granted NEC and

Bosse’s motion to dismiss on the grounds that the First Amended Petition was barred by the five-

year statute of limitations especially since, based on the record before us, the date Kaplan’s

claims accrued is contested. Points IV and V are granted.

 Points VI & VII

 In Points VI and VII, Kaplan argues the trial court erred in dismissing Counts III and IV

of her First Amended Petition against Bosse because there were allegations that Bosse owed

Kaplan an individual duty. NEC and Bosse respond that Bosse cannot be held personally liable

because he was acting solely as an agent for NEC. However, NEC and Bosse fail to address

Bosse’s liability acting as an agent for Kaplan.

 Analysis

 Missouri courts, relying on the Restatement (Second) of Agency, have held that an agent

for a disclosed principal is not personally liable for acts performed within the scope of the

agent’s authority. State ex rel. William Ranni Assocs., Inc. v. Hartenbach, 742 S.W.2d 134, 140

(Mo. banc 1987); Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc., 220 S.W.3d 350, 355

(Mo. App. S.D. 2007). This principle is found in Section 7.02 of the Restatement (Third) of

Agency, which provides:

 An agent’s breach of a duty owed to the principal is not an independent basis for
 the agent's tort liability to a third party. An agent is subject to tort liability to a third
 party harmed by the agent’s conduct only when the agent’s conduct breaches a duty
 that the agent owes to the third party.

 “Agency is the fiduciary relationship that arises when one person (a ‘principal’) manifests

assent to another person (an ‘agent’) that the agent shall act on the principal’s behalf and subject

 14
to the principal’s control, and the agent manifests assent or otherwise consents to act.”

Restatement (Third) of Agency § 1.01; see Emerson Elec. Co. v. Marsh & McLennan Cos., 362

S.W.3d 7, 12-13 (Mo. banc 2012); see also Hardcore Concrete, LLC, 220 S.W.3d at 354. An

agency relationship arises only when the elements above are present, and the characterization of

the relationship by the parties or in the context of industry or popular usage is not controlling.

Restatement (Third) of Agency § 1.02.

 While an agent represents the insurer, an insurance broker, unless otherwise authorized

and provided, represents the insured and, unless otherwise shown by the evidence, is regarded as

an agent of the insured. Emerson Elec. Co., 362 S.W.3d at 12-13 (quoting Gilbert v. Malan, 100

S.W.2d 606, 612 (Mo. App. 1937)). “When an insurance broker agrees to obtain insurance for a

client, with a view to earning a commission, the broker becomes the client’s agent and owes a

duty to the client to act with reasonable care, skill, and diligence.” Emerson Elec. Co., 362

S.W.3d at 12 (quoting A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394-95 (Mo. App.

E.D. 1998)). Thus, an agent has a duty to the principal to act with the care, competence, and

diligence normally exercised by agents in similar circumstances. Restatement (Third) of Agency

§ 8.08; Emerson Elec. Co., 362 S.W.3d at 12.

 We note again that NEC and Bosse’s brief not only fails to state, but does not apply the

appropriate standard of review. NEC and Bosse assert in their brief, “[h]ere, there is no

allegation that Bosse agreed to personally, outside the scope of his agency with NEC, report the

claim.” In fact, the briefs of GNIC, NEC and Bosse, are replete of such statements, seeking this

Court to ignore our standard of review for a motion to dismiss: take all factual allegations in the

petition as true, and construe them in favor of the pleader. R.M.A. by Appleberry, 568 S.W.3d at

424. This we cannot and will not do; thus, the appropriate question this Court must decide is

 15
whether the First Amended Petition alleges that Bosse breached a duty he owed to Kaplan, or

stated differently, whether Bosse was Kaplan’s agent and breached a duty to her.

 The First Amended Petition alleges that Bosse had a longstanding and close relationship

with Kaplan, and as a result, Kaplan trusted Bosse to handle all aspects of her insurance policies.

It alleges that Bosse informed Kaplan that his allegiance was to her and her husband, and that he

turned down business with at least one other person due to his loyalty to Kaplan. Further, it

avers that Bosse agreed to handle Kaplan’s insurance needs, including the handling of

communications on behalf of Kaplan to insurance companies and underwriters. Taken as true

for purposes of the motion to dismiss, we find these allegations are sufficient to state a claim

against Bosse individually. Accordingly, the First Amended Petition states a claim against Bosse

individually for negligence and breach of fiduciary duty. Points VI and VII are granted.

 Point II

 In Point II, Kaplan argues the trial court erred in dismissing Count II of her First

Amended Petition because it properly pleaded a claim for unjust enrichment in the alternative.

GNIC asserts Kaplan cannot maintain a claim for unjust enrichment when there was an express

contract between them.

 Analysis

 GNIC’s motion to dismiss argued that unjust enrichment claims based entirely on express

contracts must be dismissed because it is legally implausible to bring claims for both unjust

enrichment and breach of contract. However, a petition may plead a claim for unjust enrichment

as an alternative to breach of contract. Rule 55.10; Howard v. Turnbull, 258 S.W.3d 73, 76 (Mo.

App. W.D. 2008). Pleading claims in the alternative, even if the claims are inconsistent, is

permitted by Rule 55.10. While it may be true that Kaplan cannot ultimately recover on both

 16
claims, she certainly is not barred from pleading them both in the alternative. 4 Turnbull, 258

S.W.3d at 76; Burns Nat. Lock Installation Co., Inc. v. Am. Family Mut. Ins. Co., 61 S.W.3d 262,

272 (Mo. App. E.D. 2001) (“The doctrine of election of inconsistent theories of recovery

requires a party to elect between theories of recovery that are inconsistent, even though pled

together as permitted by Rule 55.10, before submitting the case to the jury.”). The trial court

could not have properly dismissed Count II of the First Amended Petition on the grounds it was

inconsistent with Count I.

 GNIC now first asserts on appeal that the First Amended Petition does not meet the

second and third elements of unjust enrichment. However, this argument overlooks our

requirement to review the propriety of dismissal based only on the grounds raised in the motion

to dismiss. See McBride v. McBride, 288 S.W.3d 748, 750-51 (Mo. App. S.D. 2009); City of

Lake St. Louis, 324 S.W.3d at 759. We may not affirm the dismissal based on a ground the trial

court did not consider, and the trial court cannot have based its dismissal on a ground not raised

in GNIC’s motion to dismiss. Therefore we decline to address GNIC’s new argument. Point II

is granted.

 Point III

 In Point III, Kaplan argues the trial court erred in dismissing Count I of the First

Amended Petition because it properly stated a claim for vexatious refusal to pay under Section

375.420. GNIC disagrees and asserts the First Amended Petition failed to plead any facts to

support Kaplan’s claim that GNIC’s refusal to pay was without reasonable cause or excuse.

 Analysis

4
 To be clear, we do not decide here whether Kaplan may or may not ultimately recover on both her claim for unjust
enrichment as well as breach of contract. We merely hold that she is not barred from pleading both claims because
they are arguably inconsistent.

 17
 Section 375.420 provides:

 In any action against any insurance company to recover the amount of any loss
 under a policy of automobile, fire, cyclone, lightning, life, health, accident,
 employers’ liability, burglary, theft, embezzlement, fidelity, indemnity, marine or
 other insurance except automobile liability insurance, if it appears from the
 evidence that such company has refused to pay such loss without reasonable cause
 or excuse, the court or jury may, in addition to the amount thereof and interest,
 allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred
 dollars of the loss, and ten percent of the amount of the loss in excess of fifteen
 hundred dollars and a reasonable attorney’s fee; and the court shall enter judgment
 for the aggregate sum found in the verdict.

 To establish a claim for vexatious refusal to pay, an insured must plead: (1) it had an

insurance policy with the insurer; (2) the insurer refused to pay; and (3) the insurer’s refusal was

without reasonable cause or excuse. Green Tree Servicing, LLC v. Chicago Title Ins. Co., 499

S.W.3d 771, 775 (Mo. App. E.D. 2016) (citing Dhyne v. State Farm Fire and Cas. Co., 188

S.W.3d 454, 457 (Mo. banc 2006)).

 Missouri courts recognize the difficulty of proving a negative in the innumerable contexts

of vexatious refusal to pay – namely, showing that an insurer was “without reasonable cause or

excuse” in failing to pay on its policy. Dhyne, 188 S.W.3d at 458. Accordingly, direct and

specific evidence of vexatious refusal is not required and “the jury may find vexatious delay

upon a general survey and consideration of the whole testimony and all the facts and

circumstances in connection with the case.” Id. (quoting DeWitt v. Am. Family Mut. Ins. Co.,

667 S.W.2d 700, 710 (Mo. banc 1984)). The determination of whether an insurer was without

reasonable cause or excuse is, by its nature, a fact-intensive inquiry. See e.g., Groves v. State

Farm Mut. Auto. Ins. Co., 540 S.W.2d 39, 42 (Mo. banc 1976) (holding that whether an insurer’s

refusal to pay was without reasonable cause or excuse depends on how the facts and

circumstances surrounding the refusal to pay “would have appeared to a reasonable person

before trial.”); Russell v. Farmers & Merchants Ins. Co., 834 S.W.2d 209, 221 (Mo. App. S.D.

 18
1992) (holding that whether a refusal to pay is vexatious depends on the “situation as presented

to the insurer at the time it was called on to pay.”).

 GNIC argued in its motion to dismiss, and repeats the same language in its brief, that

Kaplan failed to plead “any facts to support [her] conclusory allegation” that GNIC’s refusal to

pay was without reasonable cause or excuse. Once again, we encounter the recurrent theme

among GNIC’s arguments on appeal: a failure to appreciate the standard of review. To survive

GNIC’s motion to dismiss it was sufficient that the First Amended Petition alleged Kaplan was

provided coverage under the GNIC Policies, GNIC refused to pay, and that refusal was without

reasonable cause or excuse. GNIC’s bare assertion that it had reasonable cause to refuse to pay

will not defeat the First Amended Petition’s contrary allegation.

 GNIC argues it was not provided with actual notice until March 30, 2017, and therefore

its refusal to pay was reasonable. However, the determination whether an insured provided

notice to its insurer in a reasonable time is typically a fact issue for a jury. See Green Tree

Servicing, LLC, 499 S.W.3d at 776-77. Especially when this issue of notice is the basis for

GNIC’s argument that its denial of coverage was reasonable, it should not be decided by a

motion to dismiss. To grant the motion to dismiss on this ground, the trial court would have to

find the First Amended Petition’s allegation that “Kaplan provided adequate notice to her agent

and GNIC in compliance with the terms of the Policies” to be false. Such a finding is

impermissible under the standard for granting motions to dismiss. See R.M.A. by Appleberry,

568 S.W.3d at 424 (holding that a court must accept all properly pleaded facts as true and may

not weigh them to determine whether they are credible or persuasive). We find the First

Amended Petition states a claim for vexatious refusal to pay. Point III is granted.

 19
 CONCLUSION

 For the foregoing reasons, the judgment of the trial court is reversed and remanded for

further proceedings consistent with this opinion.

 ____________________________________
 Lisa P. Page, Judge

Robin Ransom, P.J. and
James M. Dowd, J., concur.

 20